No. 8752.

BOULDER & LARIMER COUNTY COMPANY v. CULVER ET AL.

1. WATER RIGHTS—*Abandonment.* The mere change of the conduit by which water is conveyed from the place of diversion to the place of use is not an abandonment.

2. *Change of Point of Diversion.* Senior appropriator was permitted to change the point of diversion up stream. A junior appropriator, whose point of diversion was below both the original point of diversion of the senior, and that to which the change was allowed, was not injured by such change.

3. *Head Gate.* Under c. 153 of the laws of 1911 the Water Commissioner may require every appropriator to install a head gate to his ditch so that the flow of water thereto may be regulated.

*Error to Boulder District Court, Hon. Neil F. Graham, Judge.*

Mr. L. R. RHODES, for plaintiff in error.

Mr. JOHN A. RUSH, for defendants in error.

Mr. Justice Carrigues delivered the opinion of the court.

Over fifty years ago Cary Culver and John Mahoney settled on Little Thompson creek in Larimer County where they acquired a large tract of land and were engaged in farming and stock raising. In 1867 they took out a ditch called the Culver and Mahoney ditch from the creek, for irrigation. About 1,200 acres of their land lay under this dich as extended in 1875. In 1878 Culver and Mahoney together with one Blore took out another ditch, with intake about a half a mile further up the creek, which they called the Supply Lateral ditch, being higher up it covered about

2,000 acres of the Culver and Mahoney tract. It seems from the evidence that this ditch might have been built in 1878 for three purposes: to carry independent water from the St. Vrain creek, that came from the Supply Lateral; to make a distinct appropriation from the Little Thompson through the Supply Lateral ditch, and to carry the appropriations already made by the Culver and Mahoney ditch, Culver succeeded to the rights of Mahoney, and after the former's death, his four children, defendants in error, succeeded to his ditch and water rights.   In 1883 there was a general adjudication under the statute of all the ditch rights on the stream, which among others, settled the following priorities:   Culver and Mahoney ditch priority No. 13, 19.5 cubic feet per second, date April 15, 1867; priority No. 30, 19.5 cubic feet per second, date April 30, 1875; Boulder and Larimer County ditch, priority No. 27, 27.2 cubic feet per second, June 30, 1875; priority No. 36, 39.52 cubic feet per second, May 10, 1877; and the Supply Lateral ditch, priority No. 43, 35.568 cubic feet per second, November 30, 1878. There is evidence that the Culver and Mahoney ditch was hard to maintain, and that one purpose in constructing the Supply Lateral ditch was to transfer into, and use through it, the Culver and Mahoney appropriations.   The evidence shows that from 1878 to 1894, the Culver and Mahoney water was generally, though not always carried through the Supply Lateral ditch.   In 1894 an unprecedented flood swept down the creek, and carried away the Culver and Mahoney headgate, dam, and flume, and filled up the ditch with debris, so that it was completely destroyed, and could be no longer used to divert water from the creek.   Since this flood in 1894, the Culver and Mahoney ditch water, when needed for irrigation of the Culver lands and obtainable from the creek, has been diverted into and used through the Supply Lateral ditch.   The evidence, which sustains the finding of the court, shows that the 39 feet of the old Culver and Mahoney appropriations since 1894 has been diverted and used exclusively through the Supply Lateral ditch, and that the old Culver and Mahoney ditch since then,

except as a lateral, has been abandoned. No decree was obtained authorizing such transfer. The Culver and Mahoney water was used this way, without complaint, through the Supply Lateral ditch until 1912, when the water commissioner refused to recognize the transfer until a decree was obtained therefor. Thereupon, August 5, 1912, defendants in error filed a petition in the proper court praying that the original decree entered in 1883 to the Culver and Mahoney ditch, be so modified that the appropriations decreed to it be changed in the point of diversion, and the priorities transferred to the headgate and intake of the Supply Lateral ditch. The Boulder and Larimer County Irrigating and Manufacturing Ditch and Reservoir Company, plaintiff in error, entered its appearance and protested against such transfer. January 21, 1913, it filed a complaint praying that the priorities of appropriation decreed to the Culver and Mahoney ditch be declared abandoned, and that the transfer of the priorities be enjoined. April 7, 1913, these two cases were consolidated for trial, and August 18, 1913, after trial to the court, it found there had been no abandonment of the Culver and Mahoney water since the decree of 1883, and entered a judgment dismissing the complaint. In the transfer case it entered a decree permitting the Culver and Mahoney water to be transferred from the headgate of the Culver and Mahoney ditch into the intake and headgate of the Supply Lateral ditch, and plaintiff in error brings the case here for review.

1. The evidence shows that the 39 feet of the Culver and Mahoney water was used every year, when obtainable, from 1878 to 1894, through one ditch or the other; that after the flood destroyed the Culver and Mahoney ditch in 1894 it was abandoned, except as portions of it were used as a lateral; but that the Culver and Mahoney priorities were not abandoned, and that the water decreed to this ditch was diverted into the intake of the Supply Lateral ditch, where it was used without objection for irrigation until 1912. While the ditch was abandoned, the evidence is not clear, satisfactory and convincing that the water rights decreed

to it were abandoned; it is quite the contrary.   Therefore, the judgment dismissing the abandonment complaint will be affirmed.

2.   The transfer statute, Laws of 1903, p. 279, provides that the court shall enter a decree permitting the change unless it appears from the evidence that such change will injuriously affect the vested rights of others in and to the water of the stream.   The intake of the Supply Lateral ditch is about a mile above the intake of the old Culver and Mahoney ditch, and the intake of the Boulder and Larimer County ditch is about a mile below.   The evidence shows— unless the water was abandoned—that it made no difference to the Boulder and Larimer County ditch consumers whether the Culver and Mahoney water was diverted through the intake of the Culver and Mahoney ditch or the Supply Lateral ditch.   It is apparent from the evidence that it could make no difference at which headgate it was taken out, if the Culvers were entitled to use the water.   In fact, one of the officers of plaintiff in error testified that if the water was not abandoned, and the Culvers were entitled to use it, that taking it out higher up the stream would be an advantage to their ditch rather than an injury.   The finding of the court that the vested rights of others in and to the use of the water of the stream will not be injuriously affected on account of the transfer, is right, and the decree permitting the transfer will be affirmed.   The whole question turned on the right of the Culvers to the use of this water through the Supply Lateral ditch.   Of course if the Culver and Mahoney water rights were abandoned, then the priority of the Boulder and Larimer County ditch, being senior to the priority of the Supply Lateral ditch, plaintiff in error would be injuriously affected by the transfer.   The contention of plaintiff in error seems to be that the Culver and Mahoney water was abandoned at the time the ditch was abandoned in 1894, and that since then the water they diverted into the Supply Lateral ditch was the water decreed to that ditch, having a priority dating from 1878.   But the evidence does not sustain this contention.   On the contrary

it shows that the Culver and Mahoney water has been constantly used since 1894 through the Supply Lateral ditch, with no intention of abandonment. It would seem strange for the owners to permit an appropriation having a priority dating from 1867 to pass their intake and flow down the stream for the use of a junior ditch, while diverting into their own ditch an appropriation having a priority dating from 1878.

3. It is possible that in the adjudication of 1883 the Culver and Mahoney water should have been decreed to the Supply Lateral Ditch, instead of the Culver and Mahoney ditch. If it was an error, we are not attempting to correct it, but we do not see how plaintiff in error can be harmed by a change in the point of diversion, with the question of abandonment eliminated. The Culver and Mahoney priorities are senior to the Boulder and Larimer County ditch appropriations, and the latter are all senior to the Supply Lateral ditch appropriation, so after the 39 feet of the Culver water has been diverted, the Boulder and Larimer County ditch is prior to the Supply Lateral ditch.

The evidence shows that the Supply Lateral ditch is taken out on a grade below the bed of the creek, and that it has no headgate. The Laws of 1911, p. 463, require the owners of irrigating ditches taking' water from any stream, to erect, maintain and keep in repair at the point of intake, a suitable and proper headgate. It gives the water officials power to compel' the installation of a headgate, so that the water commissioner can regulate the flow into the ditch. While the Culvers have the prior right to divert 39 feet from the stream, when they have a necessity for its use, they have no right to divert more on the Culver and Mahoney decree than is necessary, or at a time when it cannot be beneficially applied for irrigation, and the intake of the ditch should have a headgate so that the water commissioner can properly regulate the use of the water.

Judgment affirmed.

Chief Justice White and Mr. Justice Scott concur.