## No. 12,783.

Seven Lakes Water Users' Association *v.* Fort Lyon Canal Company.

(4 P. [2d] 1112)

Decided October 26, 1931.   Rehearing denied November 23, 1931.

Mr. H. E. Brayton, for plaintiff in error.

Mr. H. L. Lubers, Mr. Fred A. Sabin, for defendant in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

This action, equitable in nature, by the plaintiff Fort Lyon Canal Company, against defendant the Seven Lakes Water Users' Association, both private corporations, has for its object a judicial decree to abate an alleged nuisance, which the plaintiff in its complaint says was created, and is being continued, by the defendant to the serious damage of plaintiff. Upon issues joined by the pleadings, trial was to the court without a jury. Findings of fact upon all material issues are in favor of the plaintiff and the court rendered a decree abating the nuisance and this writ of error by the defendant seeks to have this decree set aside.

The plaintiff asked for the appointment of a receiver. The trial court postponed consideration of this application until such time as, upon proper showing made, it should appear that a receiver is necessary to carry into effect its decree, and retained jurisdiction over the entire subject matter involved in the action, including receivership, until such time as the decree which it rendered shall have been complied with.

The best way to present this controversy, we think, is to summarize the elaborate findings of fact made by the trial court and its decree based thereon. The plaintiff and defendant are Colorado corporations, each of which is organized as a mutual ditch company and each owns certain priorities of water rights, canals, reservoirs and structures diverting water for irrgation in water districts numbered respectively 18 and 17, in water division No. 2 of the state of Colorado, those of the plaintiff being located on the Arkansas river and those of the defendant on the Apishapa river, a tributary of the Arkansas river, which tributary has its confluence with the Arkansas river at a point above the headgate and diversion works of the plaintiff. The defendant is the owner of the Seven Lakes Reservoir system situate in the county

of Las Animas and the owner of an intake canal about 15,400 feet in length. Plaintiff is the owner of decreed priorities of right to the use of water for irrigation in water district No. 17 which are senior in point of time to any priority owned by the defendant. The defendant has negligently permitted its headgate appurtenant to its inlet to the Seven Lakes Reservoir to fall into a state of decay and finally to be washed away save and except for a few remaining portions which do not function as a headgate or serve in any manner to regulate the waters flowing out of the Apishapa river into said inlet and thence into Seven Lakes Reservoir. The impounding dam of this reservoir is in a condition dangerous to public and private rights, and without proper repairs might fail if subjected to any unusual stress. The absence of proper control devices and headgate on said inlet to the Apishapa river and the diversion of the whole flow thereof into the defendant's reservoir, by reason of the lack of such control devices, subjects the defendant's impounding dam to the full stress of flood conditions on the Apishapa river. The conditions at the head of the intake canal of the defendant's reservoir and the lack of proper headgate and control facilities at that point constitute a nuisance, both public and private in its character, by reason of which the plaintiff has sustained special injury in the loss of water decreed to it for irrigation purposes, the right of which is superior to any right possessed by the defendant. The impounding dam of said Seven Lakes Reservoir likewise constitutes a nuisance, both public and private in its character, from the existence of which plaintiff is in imminent danger of substantial and permanent injury to its property rights. The failure of this impounding dam of the defendant properly to function would result in the complete diversion of the whole flow of the Apishapa river into Van Brimmer Arroya, a tributary of the Las Animas river, which river flows into the Arkansas river at a point below and farther down on said Arkansas river than the headgate and intake devices of

the plaintiff. The court further finds specifically that repeated notices had been served upon the defendant by the state engineer of Colorado to remedy these conditions existing upon its Seven Lakes system, and particularly the unsafe condition of this impounding dam and the lack of headgates and control devices at the point of intake from the Apishapa river, but such notices have been ignored and have not been complied with by defendant, and the plaintiff, prior to the beginning of this action, had exhausted all of its adequate legal remedies.

Upon these findings of fact the court made and entered a decree in favor of the plaintiff and against the defendant which, among other things, recites and declares that the intake ditch and dam of the Seven Lakes Reservoir without proper control devices are nuisances both public and private in their nature, and the court, therefore, decreed that the same, within 90 days from and after the making of the decree, be abated by the defendant by the construction of a proper dam across the intake ditch sufficient in character to control and divert the waters of the Apishapa river from said intake as they are now wont to flow, back into the original channel of the river, which dam shall be constructed under plans and specifications prepared by the state engineer of Colorado and by the court approved, which dam may at the option of the defendant have a proper headgate and control devices, likewise to be constructed under and in accordance with plans prepared by the state engineer and by the court approved. The court further decreed that within five months from the date of the decree the defendant repair or cause to be repaired and restored to a safe condition the impounding dam of the Seven Lakes Reservoir, under plans to be prepared by the state engineer with the approval of the court.

The decree further provides that the defendant within the time above mentioned for the construction of the dam at said intake, shall remove the obstructions in the channel of the Apishapa river below the point at which the

dam shall be constructed, so as to permit the free flow of water in the said channel to the same extent that there was a free flow of water therein prior to the creation of the nuisance which the court found to exist.

The trial court, in addition to what we have hereinbefore stated as to its refusal at the time of the hearing to appoint a receiver, made a further order that consideration thereof be deferred until such time after the expiration of the period allowed the defendant within which to abate any of the nuisances which were found to exist, as it shall be represented to the court, upon the petition of the plaintiff or some other interested person or corporation, that the defendant has failed to abate the same, at which time the court, upon proper petition, duly verified, shall determine whether or not a receiver is necessary, and for that purpose and for the purpose of making such amendments to these findings and this decree as may be found necessary, the court retains jurisdiction of the cause.

We have read with care the elaborate briefs of counsel for plaintiff in error, as well as the shorter brief of the defendant in error, and are satisfied that upon the record before the trial court, its decree was justified and no other or different decree could properly be made. The evidence clearly establishes that the impounding dam and reservoir of defendant, as they existed at the time of the beginning of this action, constituted a nuisance and a source of imminent and great danger to the general public, as well as to the plaintiff. Indeed, the defendant's counsel, at the trial, conceded that these structures were in a dangerous condition and constituted both a public and private nuisance, and defendant then agreed to make, and thereafter has made, to the satisfaction of plaintiff, and with the court's approval, such changes therein as to make them secure and thus prevent the danger to the rights of the public and of this plaintiff which otherwise probably would or might ensue. In his exhaustive argument counsel for defendant says, how-

ever, as to that portion of the decree which requires the defendant to construct a proper dam across its intake ditch sufficient in character to control and divert the waters of the Apishapa river from said intake as they are now wont to flow, back into the channel of the Apishapa river, which the court says must be constructed under plans and specifications prepared by the state engineer and approved by the court, cannot as a practical proposition be complied with. Counsel says, and the record bears him out in the statement, that the original headgate of the defendant's ditch was obliterated and destroyed by an unprecedented flood in the year 1923, and, as his conclusion therefrom, he says, defendant is not accountable and was not guilty of anything which the law imposes upon it because the result of that flood, which was an act of God, changed the channel of the Apishapa river at the places involved in this action. Counsel further says that in the process of time and for many years the channel or bed of the Apishapa river had been changing its course and by reason of deposits of soil in the river bed the channel thereof became higher than the adjacent country on either side, and because of these conditions it would be impracticable, if not impossible, and only at an enormous expense, to carry out the provisions of the decree of the court that require the defendant to construct a proper dam and headgate across the intake ditch sufficient in character to control and divert the waters of the river from the intake as they are now wont to flow, back into the channel of the river. The decree itself provides that the defendant may have the option to have a proper headgate and control devices placed in this dam, but the construction of the dam itself is made imperative. The defendant with much force says that the construction of levees on both sides or banks of the river sufficient in size and strength to confine or restrict the waters of the river within the old channel, would be so enormous and so out of all proportion to the benefits, if any, that the plaintiff would receive by such changes,

that the court ought not to make any order or orders that require such expenditures.

We are unable to perceive either the force or the pertinency of such contention. If, as the trial court found, the failure of the defendant to maintain the headgate at or near its own original site, contributed, with natural causes such as the alleged act of God that destroyed the original headgate, this circumstance, in any event, does not operate to relieve the defendant of its statutory duty to maintain a headgate or some device equivalent thereto in its ditch. The important question here, however, is not whether the flood of 1923 was or was not solely an act of God, for the result of which plaintiff is not responsible. That it obliterated defendant's headgate is conceded. But that circumstance does not justify defendant in refusing to maintain a headgate or its equivalent in its diverting intake. Section 1727, C. L. 1921, provides that the owner or owners of any irrigation ditch, canal, flume or reservoir in this state, taking water from any stream, shall erect and *maintain* in good repair, at the point of intake of such ditch, canal, flume or reservoir, suitable and proper headgate or headgates of height and strength and with embankments sufficient to control the water at all ordinary stages, and suitable and proper measuring flume, weirs and devices, and shall also erect and *maintain* in good repair suitable wastegates in connection with such ditch, canal, flume, or reservoir intake. The section further provides that if the owner of any such irrigation ditch or reservoir shall fail or neglect to erect or maintain in good repair the same, in the form and manner provided in the section, then the state engineer, division engineer, or water commissioner shall refuse to deliver any water from such stream to such owner or owners until compliance with the section is made. We cannot agree with the argument of defendant's counsel, merely because this headgate of the defendant's ditch was obliterated solely by an act of God, if such it was, that defendant is relieved of the duty to construct

and keep in repair at all times a proper headgate or headgates of its ditch, which the statute makes imperative. The discussion as to the effect of this unprecedented flood of 1923 is irrelevant under the established facts.

While we do not consider all the objections which the defendant has interposed in its briefs, we think that none of them is of such a character as to impeach in any respect the findings of fact or decree of the trial court. The rights of the defendant, whatever they may be, are amply protected by the decree, and the court's findings of fact upon the uncontroverted evidence cannot be set aside. If this decree, or a decree substantially equivalent thereto, cannot be awarded to plaintiff, the law would be subject to the just criticism that the decreed rights of prior appropriators of water in this state may be divested, and the courts are rendered powerless to afford relief to the owners.

The contention of the defendant that the cost of complying with section 1727 supra, as to the erection and maintaining in good repair all suitable and proper headgates, is prohibitive, is erroneous. The clause of the decree is that the defendant shall construct a proper dam across the intake of defendant's ditch, as above stated, sufficient to control and divert the waters of the river and the option is given to the defendant to have therein a proper headgate and control devices. The decree does not provide or require that the intake shall be at the exact location or point of the original construction, and nothing has been said in argument that convinces us, and nothing appears from the evidence, that it would be impracticable, or at an excessive cost, for the defendant to comply with this provision. Indeed, we think the court, considering the entire record, was as indulgent to the defendant as it was possible to be under the facts and the law applicable thereto.

Judgment affirmed.