## No. 16,913.

### MENDENHALL v. LAKE MEREDITH RESERVOIR CO. ET AL.

(257 P. [2d] 414)

Decided May 4, 1953.

Mr. COVER MENDENHALL, Mr. WM. L. WALKER, for plaintiff in error.

Messrs. McHENDRIE & POINTER, for defendants in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

MENDENHALL, as plaintiff in the trial court, commenced this action to enjoin defendants from diverting the

waters of Bob Creek and for damages. Compliance with such a demand entails the replacement of a destroyed dam at a point to which plaintiff refers as the head of the intake ditch to Lake Meredith from Bob Creek. Counsel for defendants, however, contend that said dam was for the benefit of plaintiff (and others) in the diversion of water from Bob Creek in order that it become available to his use through his Mallett Ditch system, the head gate of which is located on the South Branch of Bob Creek at a point approximately one mile southeasterly from the dam involved in the instant case.

It is admitted that plaintiff is the owner of Mallett ditches numbers one and two, diverting their supply of water from the South Branch of Bob Creek at a point in the NW ¼ of the NE ¼ of Sec. 4, Twp. 22 So., R. 57 W. of the 6th P. M., and the adjudicated priorities to which said ditches are entitled. Plaintiff contends that, until interfered with, substantially all of the waters of Bob Creek reached the point of diversion of the said Mallett ditches; that late in 1917 and continuing into 1918 defendants, as a means of conducting water from the Colorado canal to Lake Meredith, caused a ditch to be dug from said canal down Bob Creek, utilizing portions of said creek where large enough, and otherwise enlarging or realigning it, to a point near Lake Meredith, from which place they constructed a ditch into said lake; that in the head of said intake ditch defendants caused to be constructed a dam for the regulation of the waters of Bob Creek in order that the natural flow thereof could, and would, be allowed to continue as theretofore. Plaintiff further alleges that on or about the 15th of May, 1947, due to the negligence of defendants in the maintenance of said dam, the same collapsed and was destroyed, thereby depriving plaintiff of the use of the waters of Bob Creek.

Aside from the admission of plaintiff's ownership of the Mallett ditches and water rights adjudicated thereto, defendants deny generally, and affirmatively allege

that they neither constructed nor are responsible for the maintenance of said dam, nor is either of them; that it was constructed by the plaintiff, or his predecessor in interest and title for his, or their, sole benefit, and that there is no obligation or responsibility upon defendants to maintain said dam. They further contend that the destruction of said dam on May 15, 1947, was caused solely by an act of God from unprecedented rain and resulting floods, without negligence on the part of defendants in any respect, either as an approximate or contributing factor.

The cause was tried to the court without a jury. At the conclusion of the hearing the matter was taken under advisement and the judge of said court, after study, entered extensive findings of facts and conclusions of law generally favorable to the defendants. This was followed by judgment of dismissal of the action.

■ Differing from most cases coming before us for review, here no difficult legal problem is involved. If plaintiff has sustained the burden of proof imposed upon him on the facts, the law measuring his rights is clear. Primarily, he was required to establish, by a preponderance of the evidence, that defendants were legally bound to maintain perpetually the dam or check with which we are here concerned either, (1) by agreement, express or implied, or (2) because of operation of law. While defendants infer that the construction of the dam in the first instance probably was pursuant to contract between parties other than defendants, this is denied by plaintiff. His contention here is that Bob Creek was, and is, a natural stream and that he, as an appropriator of waters therefrom, has a vested right to the continued maintenance of conditions on the stream as they existed at the time he made his appropriation. If his position be premised on proven facts, the law protects him. *Faden v. Hubbell*, 93 Colo. 358, 28 P. (2d) 247; *Seven Lakes Water Users' Association v. Fort Lyon Canal Co.*, 89 Colo. 515, 4 P. (2d) 1112, and many other cases to the

same effect. This doctrine, of course, applies only to interference by man with natural conditions upon the stream in existence at the time of the appropriation. This necessarily brings us to a consideration of pertinent conditions that existed in the locality of Bob Creek — not in 1947 — but in and about the year 1918, and prior thereto.

The trial court found in substance that prior to 1918 Bob Creek followed a more or less well-defined channel to a point in the neighborhood of where the dam later was constructed, but that in that vicinity it lost its channel and spread out over a wide area in many directions creating a marshy condition, or swamp; that the seepage waters from this marshy area followed no well-defined channel; that part of said waters eventually found their way southeasterly to collect and form the South Branch of Bob Creek, and that part thereof flowed easterly toward Lake Meredith as the north branch of Bob Creek. The trial court further found that at the time of the construction of the supply ditch to Lake Meredith, the separation point was not in a channel or bed of a stream, and that ditches were constructed both ways from the point of separation distributing the collected waters in accordance with agreement between the parties interested; that the allegation of plaintiff that substantially all of the waters of Bob Creek reached the diversion point of the Mallett ditches on the South Branch of Bob Creek is not sustained by the evidence, and that testimony introduced on behalf of plaintiff affirmatively shows to the contrary. As we understand the findings of the judge of the trial court, he further determined that there was no objection made on behalf of the owners of the Mallett ditches to the construction of the Lake Meredith supply ditch; that they acquiesced therein and sought to benefit by the collection of all of the waters of that drainage area at one point and the division thereof at what the court terms the point of separation, so as to participate not only in the waters of

the South Branch of Bob Creek but likewise in those of the north branch, and that, *in effect,* they thereby changed their point of diversion. The trial court was unable to find from the evidence the identity of the parties who were interested in the dam, or involved in its construction, or who actually constructed it. By reference to the record it appears certain that the dam was not constructed immediately at the time of the digging of these ditches, the water first being divided by means of sacks and barricades, later by a wooden structure, and finally by the concrete dam, but the record is entirely devoid of any evidence as to who paid for either structure. Finally, and briefly, the evidence being so uncertain in many important details, the trial court determined that it was insufficient to justify any decree in plaintiff's favor.

At this point we might with propriety conclude this opinion by stating the oft-repeated rule that where the findings of the trial court are supported by the record, the judgment will not be disturbed on review. After a diligent search of this record, with due attention to the exhaustive and persuasive arguments presented in the briefs of plaintiff's counsel, we are obliged to agree with the trial judge that the evidence is so uncertain and insufficient that it cannot properly be said to constitute adequate, or any, reasonable proof of plaintiff's contentions. We are in accord with the finding of the trial court, "that the record is devoid of any testimony from which the court might determine what water, if any, the Mallett Interests were entitled to divert from Bob Creek" in 1918, or "at any given time."

In the early days, and in 1918, that there was an area served by what is designated as Bob Creek drainage basin is certain. It also is certain that at the point where the Colorado canal crosses Bob Creek, being some seven miles from the location of the dam here in question, the channel was clear-cut and well-defined. It would appear, however, that, as it proceeded southeasterly from

the Colorado canal crossing into the lower elevations of the valley, its grade was gradually reduced until eventually it came out onto almost flat terrain, and this was the situation for some distance above the point where the headgate eventually was placed. In early times it probably carried very little water except during spring runoff and summer floods, but after the construction of the Colorado canal and the application of water in the irrigation of large areas supplied therefrom through laterals of the Twin Lakes Land and Water Company (entirely separate from Twin Lakes Reservoir and Canal Co.), and the Boston Lateral Company, the lower elevations of the Bob Creek basin probably derived a more or less constant supply of water from seepage and wastage. In the flat areas of the valley above the point where the dam with which we are now concerned was located, these waters spread out over a wide area of natural meadows from which native hay was harvested. It was across such terrain that the feeder ditch to Meredith Lake was constructed.

It is alleged in plaintiff's complaint that the dam was placed in Bob Creek, but there is ample evidence in the record justifying the finding of the trial court that at that time there was no channel known as Bob Creek at that point. Even if we assume that this is not correct and that there was a true channel known as Bob Creek, we are not advised as to what direction it took or where it went. Plaintiff says that the dam was erected to divert waters from Bob Creek so as to supply his priorities in the Mallett ditches, the headgate of which was located on the South Branch of Bob Creek. This brings us to a yet more confusing set of circumstances, as disclosed from this record and plaintiff's pleadings and contentions.

In his original complaint plaintiff alleges that at a point upstream from the location of his ditches on the South Branch of Bob Creek and at a point where the dam was later located, the creek separated, the south

branch flowing toward plaintiff's headgate and the north branch easterly into Lake Meredith. This is substantially the findings of the trial court, to which plaintiff now takes exception. He now contends that the dam actually was located in Bob Creek, from which there was no natural flow to Lake Meredith, and that its only purpose was to regulate the flow into the dug ditch from that point to Lake Meredith. Nowhere was the court advised as to what became of Bob Creek. The Mallett ditches were filed upon by plaintiff's predecessors in title in 1908, the plat and the accompanying statement thereon showing the headgate to be located "at a point on the South bank of a small lake, the said Lake being the terminus of the South Branch of Bob Creek from which the said Ditch No. 1 derives its supply of water, whence the North East corner of Section No. 4, Township 22 South, Range 57 West of the 6th Principal Meridian bears north 76° 20′ E 1581 feet." This point on the bank of a small lake in the northwest quarter of the northeast quarter, township and range aforesaid, is approximately one mile southeasterly from the dam we have been discussing. It is said to be the terminus of the South Branch of Bob Creek. The decree adjudicating the priority rights to water through this headgate, entered some years later, fixes the headgate at the identical point, but states that it is on the South bank of the South Branch of Bob Creek, "a tributary of Bob Creek," implying naturally that the point of confluence of Bob Creek and the South Branch of Bob Creek is at some point below or farther down the creek from said headgate. Counsel for plaintiff in their brief point out that the decree is correct and that the south branch is a tributary to Bob Creek because "Branches of a stream flow together, rather than apart." If this be true, it is difficult to see how a diversion from Bob Creek could affect a priority right from the South Branch of Bob Creek at a point thereon above the con-

flence of the two streams. To add confusion, however, at another point in plaintiff's brief, it is stated that, "The South Branch of Bob Creek rises in the Northwest part of Crowley County and flows Southeast, and the North Branches of Bob Creek rise in the North central part of Crowley County and flow in a Southwesterly direction until the branches converged in a lake sometimes known as Sessler Lake, the South bank of which became the point of diversion for the Mallett water rights." This would indicate the contention that the north and south branches of Bob Creek converge in Sessler Lake above the plaintiff's headgate, which, it is said, is in the south bank of said Sessler Lake. During trial plaintiff introduced exhibits showing the location of Sessler Lake to be in section 33, in the township north of, and a considerable distance from, the "small lake" in which the headgate of plaintiff's ditch is located. As there is apparent confusion between the identity of said Sessler Lake and the "small lake" at which plaintiff's headgate is located, described on the plat as the terminus of the South Branch of Bob Creek, there is evident confusion as to the identity of Bob Creek itself, and whether there ever was at the point of said dam, or in the immediate vicinity, any natural stream flow by channel, bed, or otherwise. These are not all of the confusing elements contained in this record, but we point them out as indicating the difficulty a trier of facts would encounter in undertaking such a mass of contradiction and uncertainty to determine positively facts essential to warrant a decree in plaintiff's favor.

■ Since we agree with the conclusion of the trial court that the evidence was insufficient to justify a finding of any legal duty resting upon either of the defendants, by operation of law or otherwise, requiring the construction of a dam in the first instance, or its maintenance during later years, this issue disposes of

the entire controversy; it being the pivotal point on which the resolution of the whole matter depends.

The judgment of the trial court is affirmed.