Jim TATUM, Defendant–Appellant,

v.

The PEOPLE of the State of Colorado ex rel. Harold D. (Hal) SIMPSON, State Engineer for the State of Colorado; and Steven J. Witte, Division Engineer for Water Division 2, Plaintiffs–Appellees.

No. 04SA382.

Supreme Court of Colorado,
En Banc.

Nov. 7, 2005.

Rehearing Denied Nov. 28, 2005.

Jim Tatum, Pro Se, Trinidad, Defendant–Appellant.

John W. Suthers, Attorney General, Paul L. Benington, Assistant Attorney General, Natural Resources and Environmental Section, Denver, for Plaintiffs–Appellees.

PER CURIAM.

This is an appeal from an order of the District Court, Water Division 2 (water court) enjoining Appellant, Jim Tatum, from continuing to violate section 37–84–112(1), C.R.S. (2005), by failing to maintain a suitable and proper headgate at the point of diversion from the Purgatoire River into the Dolores Duran Ditch. Because the evidence in the record is sufficient to support the water court's findings, we affirm the water court's order.

I

On July 2, 2003, the Office of the State Engineer (state engineer) conducted a field inspection of the headgate to the Dolores Duran Ditch (Ditch) at its point of diversion from the Middle Fork of the Purgatoire River. The inspection revealed that the Ditch was permitted to divert water from the river above its decreed amounts due to "the lack of a controllable river headgate." The inspection also found that "installation of a controllable river headgate on the river may be difficult" because the point of diversion was a swamp area. The state engineer determined as a result of the inspection that Tatum was in violation of section 37–84–112(1) for failing to maintain a suitable and proper headgate sufficient to control the Ditch's inflow of water. Therefore, on July 9, 2003, the state engineer ordered Tatum to install a controllable and lockable headgate at the decreed point of diversion or a wastegate and waste ditch above the existing measuring flume in accordance with section 37–84–112(1).

Nearly seven months later, in January 2004, the state engineer returned to inspect the Ditch, but found that Tatum had failed to comply with its July 9, 2003 order. Conse-

quently, the state engineer filed a complaint in the water court seeking, *inter alia,* injunctive relief enjoining Tatum from further violating section 37–84–112(1).

The water court held an evidentiary hearing on the matter and on July 9, 2004, granted the state engineer's relief. Although the water court acknowledged that the headgate was "workable," it determined that the headgate and wastegate "no longer serve the purpose of controlling the water in the ditch as the ditch has fallen into a state of disrepair." The court found that Tatum himself acknowledged that the headgate allowed him to divert water in excess of his decreed amount. Hence, the court found Tatum in violation of section 37–84–112(1) and ordered him to either comply with the state engineer's order, or breach a hole in the Ditch so that all diverted waters could be returned to the Purgatoire River.

Tatum subsequently filed the present appeal in this court. Although he asserts a host of challenges to the water court's order, the essence of Tatum's position is that the water court erred in finding him in violation of section 37–84–112(1).

## II

This is an enforcement action initiated by the state engineer in the water court pursuant to section 37–92–503, C.R.S. (2005). This court has direct appellate review jurisdiction over water matters pursuant to Article VI, section 2(2) of the Colorado Constitution, section 13–4–102(1)(d), C.R.S. (2005), and C.A.R. (1)(a)(2). *See Colorado Ground Water Comm'n v. N. Kiowa Bijou Ground Water Mgmt. Dist.,* 77 P.3d 62, 69 n. 6 (Colo.2003); *City of Sterling v. Sterling Irrigation Co.,* 42 P.3d 72, 74 (Colo.App.2002).

■ Tatum asserts a number of contentions attacking the water court's finding that he was in violation of section 37–84–112(1). However, because the water court's findings are supported by the record, we conclude that Tatum's arguments are without merit.

■ The water court's factual findings are binding "on appeal 'unless they are so clearly erroneous as to find no support in the record.'" *In re Application for Water Rights of*

*the City of Black Hawk v. City of Central,* 97 P.3d 951, 956 (Colo.2004) (quoting *In re Gibbs,* 856 P.2d 798, 801 (Colo.1993)).

Section 37–84–112(1) requires the owner of an irrigation ditch to install and maintain at the point of intake a suitable and proper headgate to control the water at all ordinary stages. *See Boulder & Larimer County Irrigating & Mfg. Ditch & Reservoir Co. v. Culver,* 63 Colo. 32, 36, 164 P. 510, 512 (1917). The statute provides in relevant part:

> The owners of any irrigation ditch ... taking water from any stream, shall erect where necessary and maintain in good repair, at the point of intake of such ditch ..., a suitable and proper headgate of height and strength and with embankments sufficient to control the water at all ordinary stages ....

§ 37–84–112(1). The statute also requires an owner to install and maintain a suitable and proper measuring flume and wastegate in connection with the ditch. *Id.*

■ A headgate must be sufficient to control the waters entering a ditch. *See Seven Lakes Water Users' Ass'n v. Fort Lyon Canal Co.,* 89 Colo. 515, 521, 4 P.2d 1112, 1114 (Colo.1931). It is the duty of every person taking water from an irrigation ditch, upon finding that he is receiving more water from the ditch through his headgate or any other means whatsoever, to take immediate steps to prevent more water from entering the ditch than that to which he is entitled. *See* § 37–84–125, C.R.S. (2005).

## III

In the present case, the water court determined that Tatum was in violation of section 37–84–112(1) because the headgate was unable to control the flow of water into the Ditch. The record indicates that on June 16 and July 1, 2004, the water court held an evidentiary hearing at which Tatum testified that his headgate was capable of controlling water flowing around it at all ordinary stages. Although this testimony was corroborated by another defense witness, the water court heard testimony from three other witnesses indicating that although the headgate was functional, it was unsuitable because it

failed to control the inflow of water around it. Indeed, the water commissioner, the division engineer, and the assistant division engineer all testified that the headgate was unsuitable for controlling the water flowing around it because it was located in a swamp area.

The water commissioner testified that he inspected Tatum's headgate and observed that it failed to control the water flowing around it because it was situated in a swamp area. The water commissioner stated that water flowed around the headgate for a distance of 75 yards and that Tatum acknowledged this problem and agreed to correct it by installing a suitable wastegate.

The water commissioner's testimony was consistent with that of the division engineer who testified that he twice inspected the Ditch and found that neither the headgate nor the wastegate were effectively controlling the excess inflow of water. The division engineer testified that Tatum sent a letter to the state engineer indicating his intent to comply with the state engineer's order. As recognized by the water court, Tatum's letter acknowledges the violation. The letter states:

> The headgate is located some distance upstream from my measuring flume. It is in a very swampy, inaccessible spot and [the water commissioner] and I agreed that I would put in a dump box close to my measuring flume to divert excess water back into the river. I previously asked your office to provide me with the amount of water your office claims I am entitled to
> . . . .

The water court's determination is also supported by the testimony of the assistant division engineer who testified that the banks around the headgate were inadequate to prevent water from entering the Ditch during normal flows. He explained that although the headgate was fully closed, the flow into the Ditch was coming around the headgate structure because it was not properly designed and constructed to meet the requirements of section 37–84–112(1).

The water commissioner, division engineer, and assistant division engineer all testified that the headgate was unsuitable to control the flow of water entering the Ditch and that this situation violated section 37–84–112(1). The evidence indicates that excess flow into the Ditch occurred during ordinary stages and that although there was a sluice pipe installed in the Ditch, it failed to meet the standards of a suitable wastegate pursuant to section 37–84–112(1).

## IV

This evidence supports the water court's finding that Tatum was in violation of section 37–84–112(1). The record clearly indicates that although a headgate was present at the point of diversion, it nonetheless failed to serve its function to control the inflow of water at all ordinary stages. Given this evidence, the record amply supports the water court's conclusion that Tatum was in violation of section 37–84–112(1). Accordingly, we affirm the water court's July 9, 2004 order.