The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 12, 2020

## 2020COA161

**No. 19CA1588, *Montezuma Valley Irrigation Company v. Board of County Commissioners of the County of Montezuma* — Transportation — Highway Safety — Owners Construct Culverts**

A division of the court of appeals considers the obligations imposed by section 43-5-305(1), C.R.S. 2019, which requires the owner or builder of a ditch, race, drain, or flume that crosses a highway to "construct" a culvert, bridge, or similar structure and requires the board of county commissioners to "maintain" that structure. As a matter of first impression, the division concludes that the board of county commissioners' obligation to "maintain" such culverts, bridges, and similar structures includes the obligation to replace the structures.

Court of Appeals No. 19CA1588
Montezuma County District Court No. 18CV30069
Honorable Douglas S. Walker, Judge

Montezuma Valley Irrigation Company,

Plaintiff-Appellee,

v.

The Board of County Commissioners of the County of Montezuma, Colorado,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE GOMEZ
Fox and Martinez*, JJ., concur

Announced November 12, 2020

Hoskin Farina & Kampf, John P. Justus, Karoline M. Henning, Grand
Junction, Colorado, for Plaintiff-Appellee

John Baxter, County Attorney, Durango, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1     A state statute allocates the responsibilities for any ditch that crosses a roadway: the ditch owner or creator must "construct" a culvert, bridge, or similar structure across the road; and the county must "maintain" that structure.  But when the structure reaches the end of its useful life, who is responsible for replacing it?

¶ 2     This case requires us to answer that question.  A ditch owner, Montezuma Valley Irrigation Company (MVIC), and a board of county commissioners, the Board of County Commissioners of the County of Montezuma (the county), disagree about which of them bore the responsibility for replacing a culvert that allowed irrigation water to flow through a ditch under a county road.

¶ 3     Section 43-5-305(1), C.R.S. 2019, assigns the responsibilities for ditches, races, drains, and flumes as follows:

> Any person or corporation owning or constructing any ditch, race, drain, or flume in, upon, or across any highway shall keep the highway open for safe and convenient travel by constructing culverts, bridges, or similar structures over such ditch, race, drain, or flume.  When any ditch is constructed across, in, or upon any highway, *the person owning or constructing such ditch shall construct* a culvert, bridge, or similar structure long enough to conduct the water from shoulder to shoulder from such road or highway or of such greater length as the board of county

1

> commissioners having jurisdiction thereover may require . . . . *The board of county commissioners shall maintain* said culvert, bridge, or similar structure after construction, in accordance with the provisions of section 37-84-106, C.R.S.

(Emphases added.) Section 37-84-106, C.R.S. 2019, in turn, provides that "[a]ll bridges constructed over any ditch, race, drain, or flume crossing any public highway, street, or alley, after construction, shall be *maintained by and at the expense of the county or municipality* in which such ditch, race, drain, or flume may be situated." (Emphasis added.) Because the General Assembly has broadly defined "highways," the provisions of section 43-5-305(1) apply to any public road. *See* § 43-2-201, C.R.S. 2019.

¶ 4 We conclude, as the district court did, that the county's statutory obligation under section 43-5-305(1) to "maintain" culverts, bridges, and similar structures includes the obligation to replace such structures. Accordingly, we affirm the judgment.

## I. Background

¶ 5 MVIC is a mutual ditch and reservoir company formed in accordance with sections 7-42-101 through 7-42-118, C.R.S. 2019. It owns and maintains the U Lateral Ditch, which it uses to deliver

2

irrigation water to its shareholders. The ditch passes under County Road W in Montezuma County.

¶ 6 At some point before 2017, a culvert was installed under County Road W where it intersects with the U Lateral Ditch to allow water from the ditch to pass under the road.[1] In 2017, the county determined the culvert had reached the end of its useful life and needed to be replaced to ensure the safety of travelers along the road. The county asked MVIC to pay for a new culvert or provide labor and equipment for the installation. MVIC declined to do so. So, in early 2018, the county replaced the culvert itself and sought reimbursement from MVIC.

¶ 7 In response, MVIC filed a complaint for declaratory judgment and a motion for summary judgment under C.R.C.P. 56(h), arguing that section 43-5-305(1) assigns responsibility for replacing the culvert to the county. The county responded that the statute

---

[1] It's unclear exactly who constructed the original culvert, or when, or whether the road or the ditch existed first, but none of those facts affects our analysis. Nor do the parties' past dealings replacing other culverts in the county affect our analysis. Those dealings might be relevant if we were interpreting a contract between the parties, but they have no bearing in interpreting a legislative enactment.

assigns such responsibility to MVIC. The county also argued that summary judgment wasn't appropriate due to genuine issues of material fact regarding the parties' statutory obligations.

¶ 8 In support of its position, the county submitted an affidavit by its road and bridge department superintendent, who explained that in the construction industry the word "maintenance" means work to keep an existing structure (like a culvert) in working condition. The word does not, he expressed, include work to replace an existing structure, which would be considered "new work." Based on his knowledge of the industry, he opined that the duty to maintain a culvert does not include the duty to replace that culvert.

¶ 9 The district court granted MVIC's summary judgment motion, concluding that there were no issues of material fact and that the statute charges the county with the responsibility for replacing the culvert. Accordingly, the court ordered that MVIC is not obligated to reimburse the county for the replacement costs.

## II.    Analysis

¶ 10 The county argues that the district court erred in granting summary judgment because it ignored genuine issues of material

fact and misinterpreted the statute. We address each argument in turn.

## A. Genuine Issues of Material Fact

¶ 11 The county first contends that the district court erred because there were genuine issues of material fact that should've precluded a decision on summary judgment. We disagree.

¶ 12 C.R.C.P. 56(h) permits a party to move for a determination of a question of law. *Coffman v. Williamson*, 2015 CO 35, ¶ 11. We review de novo a trial court's order deciding a question of law under this rule. *Id.* at ¶ 12. Under the applicable summary judgment standard, "an order is proper under Rule 56(h) '[i]f there is no genuine issue of any material fact necessary for the determination of the question of law.'" *Id.* (quoting C.R.C.P. 56(h)). A genuine issue of material fact is one that, if resolved, will affect the outcome of the case. *City of Aurora v. ACJ P'ship*, 209 P.3d 1076, 1082 (Colo. 2009). The nonmoving party is given all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable factual issue are resolved against the moving party. *Coffman*, ¶ 12.

¶ 13    The county argues that three genuine issues of material fact precluded determination of the question of law.

- First, because section 43-5-305(1) doesn't include the word "replace" or define the word "maintain," there is an issue of material fact as to who bears the burden of replacing the culvert.

- Second, its affidavit raised an issue of material fact concerning the meaning of the word "maintain."

- And third, there is an issue of material fact as to whether requiring it (and thus public taxpayers) to pay for a culvert conveying water to a private corporation's shareholders would create an absurd result.

¶ 14    We disagree with the county's characterization of these issues. All three issues involve questions of law, not fact. Discerning the meaning of specific words in a statute is a matter of statutory interpretation, not factfinding. "Statutory interpretation involves only questions of law . . . ." *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010). And a genuine issue of material fact "cannot be raised by counsel simply by means of argument." *People*

*in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 17 (quoting *Sullivan v. Davis*, 172 Colo. 490, 495, 474 P.2d 218, 221 (1970)).

¶ 15     The county points out that, under section 2-4-101, C.R.S. 2019, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."  Thus, we must effectuate "'the commonly accepted technical or particular meaning' of words that have acquired such meanings" within a specific industry or as a legal term of art.  *Sheep Mountain All. v. Bd. of Cty. Comm'rs*, 271 P.3d 597, 604 (Colo. App. 2011) (citation omitted); *see also DISH Network Corp. v. Altomari*, 224 P.3d 362, 368 (Colo. App. 2009).

¶ 16     But the county superintendent's opinions concerning the common understanding of the word "maintain" in the present-day construction industry do not suggest that the word held the same meaning or that the General Assembly intended to apply that meaning when it adopted this statutory provision in 1883 or when it amended the provision in 1885 and 1947.  *See Sheep Mountain*, 271 P.3d at 604 (rejecting a proposed interpretation of a term in an ordinance, as "no evidence in the record indicated that the drafters . . . intended this plain meaning to apply"); *see also People v.*

7

*O'Neal*, 228 P.3d 211, 214 (Colo. App. 2009) ("[T]he most relevant time period for determining a statute's meaning is the time when the statute was enacted . . . .").[2]

¶ 17    Therefore, we conclude that the district court did not err by disregarding the county superintendent's affidavit and deciding the legal issues in this case on summary judgment.

### B.    Statutory Interpretation

¶ 18    Next, the county contends that the district court erroneously interpreted section 43-5-305(1) when it concluded that the county's obligation to maintain a culvert includes an obligation to replace the culvert.  Again, we disagree.

¶ 19    We review issues of statutory interpretation de novo.  *McCoy v. People*, 2019 CO 44, ¶ 37.  Our primary purpose in construing a statute is "to determine and give effect to the intent of the legislature and adopt the statutory construction that best effectuates the purposes of the legislative scheme."  *People v.*

---

[2] Because of the age of the statute and its amendments, the most recent of which occurred in 1947, there is very little legislative history on it — and none touching on this issue.  The same is true of the referenced section 37-84-106, C.R.S. 2019, which was adopted in 1913 and has never been amended.

*Yascavage*, 101 P.3d 1090, 1093 (Colo. 2004). In doing so, we are guided by the basic principles of statutory interpretation. *Id.* We begin by looking to the plain language of the statute, reading words and phrases in context and construing them literally according to common usage unless they have acquired a technical meaning. *Id.*; *see also* § 2-4-101. If the language is unambiguous, we look no further. *Yascavage*, 101 P.3d at 1093.

¶ 20 Statutory language is unambiguous if it is susceptible of only one reasonable interpretation. *People v. Diaz*, 2015 CO 28, ¶ 13. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Moreover, "legislative failure to define a term does not necessarily make it ambiguous," particularly where "the statutorily undefined term has a commonly understood meaning." *Stoesz v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 86, ¶ 13.

¶ 21 Applying these principles, we conclude that the duty to "maintain" in section 43-5-305(1) unambiguously includes the duty to replace. We reach this conclusion for several reasons.

9

¶ 22    First, the dictionary definition of the word "maintain" supports this conclusion. *See People v. Pratarelli*, 2020 COA 33, ¶ 15 ("When determining the common meaning of undefined statutory words, we may consider a recognized dictionary definition."). "Maintain" is defined as "to keep in an existing state (as of repair, efficiency, or validity)." Merriam-Webster Dictionary, https://perma.cc/W57G-NN5T. This definition suggests that maintaining a structure would include undertaking anything necessary to repair, restore, or replace it so as to keep it in existence.

¶ 23    The supreme court adopted a similar definition of "maintain" in interpreting parts of the Colorado Governmental Immunity Act (CGIA). *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384-88 (Colo. 1997). That case considered the provisions waiving sovereign immunity in actions for injuries resulting from a dangerous condition on a public road "caused by the negligent act or omission of the public entity in constructing or maintaining" the road. *Id.* at 1384 (emphasis omitted) (quoting § 24-10-103(1), C.R.S. 1988).[3] In

---

[3] The quoted provision is now located, in a slightly altered form, at section 24-10-103(1.3), C.R.S. 2019.

10

that case, the City of Fort Collins hadn't constructed the road at issue, but had maintained it. *Id.* Noting that the CGIA didn't define "maintain," *see id.*, the court cited a dictionary defining the word as "keeping a constructed edifice, structure, or improvement in the same general state of being, repair, or efficiency as initially constructed." *Id.* at 1385 (emphasis omitted) (citing Webster's Third New International Dictionary 1362 (1986)). Relying in part on this definition, the court concluded that the word "maintain" in section 24-10-103(1) "means to repair or restore a roadway to the same condition as originally constructed." *Id.* at 1388. As pertinent to the facts of that case, however, the court held that the city's mere ownership and maintenance of the road didn't give rise to liability for a design flaw. *Id.* at 1384-88.

¶ 24    Second, statutory definitions of "maintain" in other sections of Title 43 support our interpretation. *Cf. Castillo v. People*, 2018 CO 62, ¶ 42 ("Statutory definitions of words used elsewhere in the same statute furnish authoritative evidence of legislative intent."). In two other provisions within the same title, the General Assembly has defined a duty or right to "maintain" as including a duty or right to "replace." In a statute concerning roadside memorials — which

11

requires the Department of Transportation to "erect and maintain" certain memorials and permits individuals to "erect and maintain" other memorials — a definition explains that "'[m]aintain' means to preserve, keep in repair, or *replace* a roadside memorial." § 43-2-149(1)(e), C.R.S. 2019 (emphasis added); *see also* § 43-2-149(2)(a)(I), (2.5)(a)(I), (3)(a)(I). And in the statutes governing roadside advertising — which permit individuals to "erect" and "maintain" various advertising devices and to "maintain" some nonconforming devices — a definition makes clear that "'[m]aintain' means to preserve, keep in repair, continue, or *replace* an advertising device." § 43-1-403(9), C.R.S. 2019 (emphasis added); *see also, e.g.,* §§ 43-1-404(1)-(2), 43-1-413(1), C.R.S. 2019.

¶ 25    Although the General Assembly didn't include a definition of "maintain" (or any other term) in section 43-5-305, we can presume that it intended to use the word in a way similar to how it is used in other sections within Title 43. *See Castillo,* ¶ 42; *see also Bd. of Cty. Comm'rs v. City of Aurora,* 62 P.3d 1049, 1052 (Colo. App. 2002) (applying a definition of a statutory term that "comports with the General Assembly's use of the term elsewhere").

¶ 26    Third, a supreme court case applying an earlier version of section 43-5-305(1) to resolve a similar dispute — where a ditch owner and a county disputed who was responsible for replacing a bridge that spanned a ditch — further supports our interpretation. *People v. Farmers' High Line Canal & Reservoir Co.*, 52 Colo. 626, 627-32, 123 P. 645, 645-47 (1912).

¶ 27    At the time the supreme court decided *Farmers'*, the 1885 version of section 43-5-305(1) was in effect.  Much like the current version, that version of the statute obligated a ditch owner to construct a bridge if its ditch crossed a road.  But that version allocated the responsibility for maintaining such a bridge differently depending on its length: if the bridge was twenty feet or less in length, it was to be "maintained by the county"; but if it was over twenty feet long, it was to be "maintained . . . by the owner or owners of [the] ditch."  1885 Colo. Sess. Laws 324.

¶ 28    The bridge at issue in *Farmers'* had been lengthened several times over the years to accommodate the expansion of the ditch, such that by the time of the dispute it was over twenty feet long.  *Id.* at 628, 123 P. at 646.  Much like in this case, the county, which had been maintaining the bridge, asked the ditch owner to replace

it, and when the owner declined to do so, the county undertook the replacement itself and sought reimbursement. *Id.* at 627, 123 P. at 645-46. When the county sued to recover its construction costs, the parties disputed whether the statute applied since the ditch predated both the statute and the road. *Id.* at 630, 123 P. at 646. The supreme court ruled that the enlargement of the ditch over time brought it within the statute's scope, holding that "a proper construction of the Act of 1885 is that it was intended to cover the future maintenance of a bridge in excess of 20 feet in length required by either original construction or enlargement." *Id.* at 632, 123 P. at 647. The court therefore reversed the trial court's ruling granting the ditch owner's motion for nonsuit. *Id.*

¶ 29   While *Farmers'* doesn't directly address the meaning of the word "maintain," its holding and reasoning demonstrate the court's understanding that the party who bore the maintenance obligation for the bridge would bear the replacement obligation. That fact, along with the fact that the General Assembly later amended the statute to its current form without modifying or defining "maintain" (other than to place all maintenance obligations on counties, regardless of a bridge's length), supports our interpretation today.

14

*See* Ch. 271, sec. 1, 1947 Colo. Sess. Laws 747; *see also Marcellot v. Exempla, Inc.*, 2012 COA 200, ¶ 27 ("When the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with judicial construction of the statute." (quoting *Tompkins v. DeLeon*, 197 Colo. 569, 571, 595 P.2d 242, 243-44 (1979))).

¶ 30 Fourth, the supreme court has taken a similar approach in applying other statutory provisions that use the word "maintain." For instance, in two cases applying slightly different versions of section 37-84-112(1), C.R.S. 2019 — which at all relevant times has required irrigation ditch owners to "erect" and "maintain" proper headgates to control the flow of water — the court indicated that a ditch owner's statutory duty to maintain includes a duty to replace. *Tatum v. People ex rel. Simpson*, 122 P.3d 997, 997-99 (Colo. 2005) (per curiam) (affirming an injunction from continuing violation of the statute "by failing to maintain a suitable and proper headgate" after a ditch owner failed to comply with an order requiring it to install a controllable, lockable headgate in place of an existing headgate that failed to properly control water flow); *Seven Lakes*

*Water Users' Ass'n v. Fort Lyon Canal Co.*, 89 Colo. 515, 521, 4 P.2d 1112, 1114 (1931) (affirming an order requiring a ditch owner to construct new water controls, reasoning that a headgate's destruction by flood "does not operate to relieve the [owner] of its statutory duty to maintain a headgate or some device equivalent thereto in its ditch"). Notably, while the statute at issue in those cases requires the same person to both "erect" and "maintain" a headgate, both decisions focused on the word "maintain" in addressing the duty to replace a defunct headgate.

¶ 31    Similarly, in a case decided about a decade after the General Assembly enacted the earliest version of section 43-5-305(1), the supreme court held that "the signification to be given to the word 'maintain'" in a Denver ordinance requiring railways to "furnish, construct, put in place, and maintain" syphons for carrying away surface water "is to keep in repair or replace." *City of Denver v. Denver City Cable Ry. Co.*, 22 Colo. 565, 568-69, 45 P. 439, 440 (1896); *see also O'Neal*, 228 P.3d at 214 ("[T]he most relevant time period for determining a statute's meaning is the time when the statute was enacted.").

¶ 32    Finally, we disagree with the county's contention that our interpretation leads to an absurd result by obligating taxpayers to pay for a culvert that benefits only corporate shareholders. *See Smith*, 230 P.3d at 1190 (courts "should avoid an interpretation that produces an illogical or absurd result"). Replacing a defunct culvert benefits more than just the shareholders who receive water using the culvert. It also benefits anyone who travels on the road by ensuring the road's structural integrity. Indeed, in directing the replacement of the culvert, the county cited the need to ensure the safety of travelers along the road. There is nothing illogical about requiring a county to both maintain a culvert and replace that culvert when it reaches the end of its useful life and might pose a danger to travelers using the road above it.

## III.    Conclusion

¶ 33    The judgment is affirmed.

JUDGE FOX and JUSTICE MARTINEZ concur.