STATE

v.

**Patrick J. BROWN et al.**

**No. 82–492–C.A.**

Supreme Court of Rhode Island.

Jan. 10, 1985.

Reargument Denied Feb. 13, 1985.

Dennis J. Roberts, II, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., Providence, for plaintiff.

John A. MacFadyen, John Tramonti, Jr., John F. Sheehan, William A. Dimitri, Jr., Thomas H. Rosenfield, Providence, for defendants.

## OPINION

KELLEHER, Justice.

This is the state's appeal from judgments entered after two Superior Court justices in two separate actions dismissed all sixty-six counts of an indictment returned against five defendants. Four of the counts brought pursuant to the Rhode Island Racketeering Influenced and Corrupt Organizations Act (RICO), G.L. 1956 (1969 Reenactment) chapter 15 of title 7 (1984 Cum.Supp.), were dismissed by one justice on the basis that they violated the prohibition against ex post facto laws found in Article I, section 10, of the United States Constitution. The remaining sixty-two counts were dismissed under Rule 48(b) of the Superior Court Rules of Criminal Procedure by a second justice because of unnecessary delay in bringing the defendants to trial. We vacate the judgments below.

## I

This case began its tortuous journey through the Superior Court on December 7, 1979, when the sixty-six-count indictment was returned by the grand jury against five named defendants. The indictment charged that Patrick J. Brown and Mary M. Gentile, employees of the Rhode Island State Employees' Credit Union (RISECU), and Samuel Weinberg, Farrel Jaffa, and Peter Waligowski, owners and/or salesmen at Lincoln Auto Sales, an automobile dealership, participated in a scheme that bilked RISECU out of $265,402.61. Specifically, the indictment charged some fifty-six separate larcenies, three briberies (six counts—three for offering and three for accepting), three substantive violations of the state RICO act, and one count of conspiracy to violate the RICO act. In addition, the indictment requested that defendants' interests in the enterprise, including all real and personal property, be subject to the forfeiture provisions of § 7–15–3.

The alleged scheme involved the bribing of Brown and Gentile by the other three defendants to use their influence as loan officers at RISECU to authorize car loans for uncreditworthy individuals directed specifically to Brown and Gentile by Weinberg, Jaffa, and Waligowski. After Lincoln Auto Sales received the proceeds from these loans, often for an amount greater than the value of the car purchased, the purchasers would default on their loan payments, resulting in substantial losses to RISECU. The state alleged that Weinberg, Jaffa, and Waligowski used or invested the proceeds of these larcenies in the operation of Lincoln Auto Sales.

On August 20, 1980, a Superior Court justice heard arguments made in behalf of Brown and his codefendants [1] seeking dismissal of the four RICO-related counts. Brown argued that all the acts alleged in the indictment occurred before the effec-

tive date of the RICO statute, making any prosecution of the RICO counts unconstitutional in light of the prohibition against ex post facto laws.

Decision was reserved on Brown's dismissal motion so that the motion justice could consider the memoranda presented by the prosecution and the defense. In removing the case from the trial calendar, the motion justice promised that the case would be assigned "once the pleadings are completed, once I've rendered a decision on this aspect." Two years later, on September 7, 1982, the motion justice gave a brief bench decision in which he granted Brown's motion.

The state filed a notice of appeal of the dismissal of the RICO counts in this court on September 23, 1982. Later, on December 11, 1982, the remaining sixty-two counts were called for trial. Since the entire file was in the Supreme Court, a motion to remand the case to the Superior Court became a necessity. The state filed such a motion two months later on February 10, 1983.

On March 15, 1983, Brown filed a motion to dismiss the remaining sixty-two counts under Super.R.Crim.P. 48(b) because of the state's unnecessary delay in bringing the defendants to trial.[2] After a hearing on this motion, a second Superior Court justice dismissed the remaining counts on April 27, 1983, finding that none of the delay involved should be charged to Brown. She further held that the state had failed to prove that the two-year delay occasioned by the first justice's consideration of the RICO dismissal motion was "necessary" delay since her understanding of *State v. Anthony*, R.I., 448 A.2d 744 (1982), required that the state be charged with delay resulting from institutional factors. The state filed a notice of appeal from this ruling on May 10, 1983, and the two ap-

---

1. In the interest of clarity, we shall refer in our discussion of the ex post facto issue to defendant Brown only. Our opinion, however, applies to all five defendants equally.

2. The other four defendants filed similar motions at various times from January 18, 1983, through March 25, 1983.

peals were consolidated for review by this court.

## II

The first issue presented to us by this appeal is whether the first justice erred when he ruled as a matter of law that the RICO-related counts violated the constitutional prohibition against ex post facto laws and invalidated the four RICO counts.

 Article I, section 10, clause 1, of the United States Constitution prohibits any state from enacting ex post facto laws. An ex post facto law punishes conduct that was innocent at the time the conduct occurred; that is, it attempts to punish a citizen "for an act, which, when done, was in violation of no existing law." *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 388, 1 L.Ed. 648, 649 (1798). The proscription against such laws ensures that citizens receive fair warning of the potentially criminal nature of their conduct and "restricts governmental power by restraining arbitrary and potentially vindictive legislation." *Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981).

The first trial justice found without elaboration that the four RICO-related counts of the indictment ran afoul of the ex post facto clause. Brown had argued, and the court agreed, that all of the criminal acts alleged in the indictment occurred prior to May 5, 1979, RICO's effective date. Apparently Brown ignored one alleged act of bribery carrying the operative date of July 10, 1979, but he argues on appeal that this act is insufficient to satisfy the definition of racketeering activity found in § 7–15–1. We disagree.

 The first count of the indictment alleges conspiracy to violate RICO. The remaining pertinent counts allege substantive RICO offenses. Section 7–15–2 provides in pertinent part:

*"Prohibited activities.*—(2) It shall be unlawful for any person who has knowingly received any income derived, directly or indirectly, from a racketeering activity or through collection of an unlawful debt, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income in the acquisition of an interest in, or the establishment or operation of any enterprise.

\* \* \* \* \* \*

(c) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of an unlawful debt."

Racketeering activity is defined in § 7–15–1 as

"any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, larceny or prostitution, or any dealing in narcotic or dangerous drugs which is [chargeable] as a crime under state law and punishable by imprisonment for more than one (1) year."

Thus, the elements of a RICO offense are (1) the commission of one act of racketeering activity and (2) the use or investment of the proceeds of the racketeering activity in the establishment, conduct, or operation of an enterprise.

 The duty of a Superior Court justice in ruling on a motion under Super.R. Crim.P. 12(b)(2) testing the sufficiency of an indictment is first to examine the document to determine whether it alleges the elements of the offense charged. *United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078, 1082 (5th Cir.1978).[3] In reviewing the indictment for this purpose, the allegations contained in the pleading must be taken as true in order to avoid a premature resolution of the merits of the charges. *Id.* at 1082;[4] *see also United*

---

**3.** Superior Court Rule of Criminal Procedure 12(b)(2) is, in pertinent part, identical to its federal counterpart.

**4.** *See* Super.R.Crim.P. 12(b)(1) requiring that defenses and objections raised on pretrial motions be "capable of determination without the trial of the general issue."

*States v. Greater Syracuse Board of Realtors,* 449 F.Supp. 887, 894 (N.D.N.Y.1978); *United States v. Andreas,* 374 F.Supp. 402, 406–07 (D.Minn.1974); 1 C. Wright, *Federal Practice and Procedure:* Criminal 2d § 194 (1982).

■ Taking the allegations contained in the indictment as true, then, we are persuaded that all RICO counts survive Brown's ex post facto challenge. Two counts sufficiently aver the existence of an enterprise, the knowing receipt by defendants Weinberg, Jaffa, and Waligowski of funds derived from racketeering activity and the use or investment of the funds in the operation of the enterprise, Lincoln Auto Sales. The two counts also allege that the three defendants conducted and participated in the conduct of the enterprise and that this activity took place between October 1978 and December 6, 1979, thus continuing well after the effective date of the RICO statute.

Another count charges the requisite one act of racketeering activity: the alleged bribery in violation of § 11–7–3 that occurred on July 10, 1979, a month after RICO became effective. Brown argues that this act does not merit the exalted status of racketeering activity because § 7–15–1 requires that the racketeering act be a felony, and bribery under § 11–7–3 is a misdemeanor. We decline to accept this interpretation of § 7–15–1.

Brown's argument results from the statutory definition of "racketeering activity," which reads: " * * * any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, larceny or prostitution, or any dealing in narcotic or dangerous drugs which is [chargeable] as a crime under state law and punishable by imprisonment for more than one (1) year." Brown argues that the clause "which is [chargeable] as a crime under state law and punishable by imprisonment for more than one (1) year" applies to each and every one of the specific criminal acts set forth in the definition. The state, on the other hand, contends that the qualifying clause relates

only to the specific activity appearing immediately preceding the word "which": "or any dealing in narcotic or dangerous drugs."

■ Sutherland on statutory construction provides that "referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. * * * Thus, a proviso usually is construed to apply to the provision or clause immediately preceding it." 2A C. Sands, *Sutherland Statutory Construction,* § 47.33 at 245 (4th ed. 1984). The so-called "doctrine of the last antecedent" has a long-established place in Massachusetts case law.

> "It is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Moulton v. Brookline Rent Control Bd.,* 385 Mass. 228, 230–31, 431 N.E.2d 225, 227 (1982) (quoting *Hopkins v. Hopkins,* 287 Mass. 542, 547, 192 N.E. 145, 147 (1934)).

*See also Commonwealth v. Brown,* 391 Mass. 157, 160, 460 N.E.2d 606, 608 (1984); *Druzik v. Board of Health of Haverhill,* 324 Mass. 129, 133, 85 N.E.2d 232, 234 (1949).

■ We do not believe that the intent and purpose of this statute requires us to adopt the different approach championed by Brown. Indeed, the state's position is the most sensible interpretation, given the aim of the RICO statute. The qualifying language unquestionably indicates that the Legislature wished to avoid triggering RICO prosecutions with minor narcotics offenses and so limited such triggering offenses to felonies. We conclude that the clause of § 7–15–1 in issue applies only to its immediate antecedent: "any dealing in narcotics or dangerous drugs" and not to the other enumerated acts in the statute. Thus, the July 10, 1979 bribery count of the indictment is sufficient to support the

charge of racketeering activity required to invoke § 7–15–2 without violating the ex post facto prohibition of the Constitution. It follows that the three RICO counts that we have just discussed were improperly dismissed.

We now turn our attention to the remaining RICO count, to wit, the one alleging conspiracy. We find that this count, too, passes scrutiny under the ex post facto clause. The indictment alleges that the conspiracy continued until December 6, 1979, approximately five months after the RICO statute was enacted.

▮▮▮ Rhode Island follows the common-law rule of conspiracy,[5] which punishes the combination of two or more persons to commit an unlawful act or a lawful act for an unlawful purpose. *State v. LaPlume*, 118 R.I. 670, 677, 375 A.2d 938, 941 (1977). No overt act in furtherance of the scheme is required since the essence of the conspiracy is the unlawful agreement. *State v. Barton*, R.I., 427 A.2d 1311 (1981). Here, the question arises how long a conspiracy continues once the unlawful agreement is made. In *United States v. Coia*, 719 F.2d 1120, 1124–25 (11th Cir.1983), the Eleventh Circuit addressed this question in determining when the statute of limitations begins to run on a conspiracy charge. The court held that a conspiracy continues as long as its purposes have neither been abandoned nor accomplished. *United States v. Grammatikos*, 633 F.2d 1013, 1023 (2d Cir.1980). The Sixth Circuit has also held that "where a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated." *United States v. Mayes*, 512 F.2d 637, 642 (6th Cir.), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). Similar sentiments have been expressed in 1 Wharton's *Criminal Evidence* § 125 at 303 (13th ed. 1972).

▮▮▮ The *Coia* court stated with respect to statute-of-limitations problems involving conspiracy statutes that do not require an overt act that an indictment is sufficient if the conspiracy is alleged to have continued into the limitations period. 719 F.2d at 1124. By analogy, here the indictment clearly alleges the continuation of the conspiracy until well after the effective date of the RICO statute. The nature of the object of the conspiracy, obtaining funds through improperly authorized loans, clearly contemplated continuing acts, and no intent to abandon the object of the conspiracy is apparent—a view supported by the last alleged act of bribery that occurred after RICO's enactment. We conclude that the conspiracy count of the indictment alleges sufficient facts such that it does not violate the ex post facto provision. This count, too, was improperly dismissed. It follows that the RICO forfeiture count remains viable.

### III

▮▮▮ The only remaining issue is whether the other sixty-two counts of the indictment were properly dismissed under Rule 48(b) for unnecessary delay in bringing Brown to trial. A motion for dismissal under Rule 48(b) is addressed to the sound discretion of the trial justice. This court will not tamper with her decision absent a clear showing of abuse of that discretion. *State v. Macaskill*, R.I., 475 A.2d 1024, 1026–27 (1984); *State v. Austin*, R.I., 462 A.2d 359, 364 (1983).

▮▮▮ Rule 48(b) provides that "[i]f there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information, or complaint." The scope of this rule is broader than the constitutional Sixth Amendment speedy-trial guarantee, requiring neither a showing of prejudice nor an assertion of the right to a speedy trial. *State v. Dionne*, R.I., 474 A.2d 445, 447 (1984); *State v. Brady*, R.I., 436 A.2d 717, 718 (1981). To demonstrate entitlement to a Rule 48(b) dismissal, the

---

**5.** *See* G.L. 1956 (1981 Reenactment) §§ 11–1–1 and 11–1–6.

defendant must first prove that no portion of the delay was attributable to his or her actions. Once this requisite showing is made, the state then assumes the burden of showing that the delay was necessary. *State v. Isaac*, R.I., 477 A.2d 62, 64 (1984).

Here, the second trial justice first ruled that neither the defense nor the prosecution was responsible for the delay that ensued between the time defendants were first indicted in December 1979 until August 20, 1980, when arguments were heard on the ex post facto motion. The defense was then absolved of any blame for the passage of time that ensued from the August 1980 hearing day until the spring of 1983 when the Rule 48(b) motion came on for hearing. However, the second trial justice then ruled that all of the delay that occurred after the ex post facto argument was "attributable to the Attorney General." In making this conclusion, the trial justice emphasized the failure of the Attorney General's staff while the ex post facto motion was under advisement to sever the remaining sixty-two counts and assign them for trial.

We shall assume that the trial justice's absolving of defense counsel for any delay subsequent to August 1980 is correct, but we cannot subscribe to her conclusion that the state should have sought a severance of the sixty-two counts during the period the ex post facto motion was pending before the first trial justice. Fifty-six of the sixty-two counts that were pending while the ex post facto motion was under advisement were for larcenies and relate to fifty-six separate car sales that occurred at the dealership between November 29, 1978, and March 16, 1979. These transactions resulted in a loss to the credit union of over $265,000. Six other counts relate to bribes allegedly given by the auto dealers and received by Brown, the last of which was accepted by him on July 10, 1979. The proceeds of the sales were used and invested in the operation of the dealership in violation of RICO, and any interests or property acquired or maintained by defendants in violation of chapter 15 of title 7 would be subject to the forfeiture provisions of § 7–15–3 of RICO.

As a general rule, persons jointly indicted as alleged conspirators and the substantive acts they have allegedly committed should be tried together since separate trials on the conspiracy and substantive offenses, respectively, would necessarily involve the repetitive use of the same evidence and facts. *See State v. Parente*, R.I., 460 A.2d 430, 437 (1983). This principle is particularly applicable to the present case since the RICO counts are inextricably intertwined with the fifty-six larceny counts and the six bribery counts. The trial justice obviously overlooked the inconvenience and expense that would be experienced by the state and its witnesses by two separate trials. Consequently, the Attorney General cannot be faulted for failing to seek a severance during the period the ex post facto motion was awaiting disposition.

We would also note that the second trial justice's severance theory assumes a willingness on the part of the defense to have a separate joint trial at which the larceny and bribery counts would be tried while the ex post facto motion remained in status quo. The record belies this assumption.

Among the many motions filed in behalf of defendant Gentile was one filed in January 1980 in which she sought a severance so that she could be tried separately with regard to the fifty-six larceny counts. This motion is still pending and is graphic evidence that at least one defendant was not amenable to a joint trial on the fifty-six counts as envisioned by the second trial justice.

Consequently, we are of the belief that the second trial justice abused her discretion in ruling that the state's failure to seek severance while the ex post facto motion was under advisement constituted unnecessary delay.

The state's appeal is sustained, the judgments appealed from are vacated, and the case is remanded to the Superior Court.