## In re SUPERIOR COURT RULE OF CRIMINAL PROCEDURE 48(b).

### No. 0653b.

Supreme Court of Rhode Island.
Aug. 29, 1985.

### OPINION

KELLEHER, Justice, dissenting.

On November 21, 1984, a majority of the justices of this court approved action earlier taken by the Superior Court judges who voted unanimously to repeal Rule 48(b) of the Superior Court Rules of Criminal Procedure. As one of the minority, I take this opportunity to set forth the reasons why I did not join with my colleagues in repealing what I consider a significant and essential rule of court.

Some background is in order. In *Tate v. Howard*, 110 R.I. 641, 652, 296 A.2d 19, 26 (1972), this court attempted to put to rest the "myth of the Attorney General's unbridled calendar control." We highlighted the inherent power and obligation of the Superior Court to determine when trials of indictable offenses would take place.

"[W]hile we have recognized the Attorney General's power to conduct prosecutions on behalf of the state, once criminal process is issued either by way of complaint or indictment, his power is subject to both the judiciary's right and power to provide for an orderly administration of criminal justice within the judicial system and its obligation to protect an accused's right to due process and speedy trial." *Id.* at 653, 296 A.2d at 26.

Effective September 1, 1972, the Superior Court further enhanced its ability to control its dockets by adopting Rules of Criminal Procedure, which included Rule 48(b) (the rule). It reads:

"48. Dismissal.—

\*     \*     \*     \*     \*     \*

(b) By Court. If there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information, or complaint."

We have stated that the scope of this rule is broader than the constitutional Sixth-Amendment speedy-trial guarantee, requiring neither a showing of prejudice nor an assertion of the right to a speedy trial. *State v. Brown*, —— R.I. ——, 486 A.2d 595 (1985); *State v. Dionne*, —— R.I. ——, 474 A.2d 445 (1984); *State v. Brady*, —— R.I. ——, 436 A.2d 717 (1981).

To demonstrate entitlement to a Rule 48(b) dismissal, the defendant must first prove that no portion of the complained-of delay was properly attributable to his or her own actions. Once past this hurdle, the focus shifts to the state, which then must prove in rebuttal that the delay was necessary. *State v. Brown*, —— R.I. at ——, 486 A.2d at 602; *State v. Isaac*, —— R.I. ——, ——, 477 A.2d 62, 64 (1984). If the defendant bears any responsibility whatsoever for the delay of the case, the motion to dismiss is denied. *State v. Beaumier*, —— R.I. ——, ——, 480 A.2d 1367, 1370 (1984).

The concerns that prompted promulgation of Rule 48(b) included prompt trials and the speedy and efficient administration of justice. In addition, the rule acted as an effective deterrent to prosecutorial mismanagement and selective prosecution. Armed with this rule, the Superior Court could discourage an Attorney General from picking and choosing the cases he or she would try while leaving other, perhaps weaker, perhaps less winnable, cases languishing in the nether regions of the Attorney General's department with the hope that they would strengthen before they died of old age. While actions of this kind may not result in identifiable prejudice to the case of a particular defendant and thus foreclose a constitutionally based speedy-trial claim, they nevertheless reflect an abuse of the criminal-justice system that manifests total disregard for the rights of a defendant to be free from frivolously leveled charges and to receive prompt adjudication of his guilt or innocence. In addi-

tion, the rule was designed to combat delay "contrived for the purpose of giving the state an advantage, or harassing the defendant and preventing him from preparing a fair and competent defense." *State v. Paquette*, 117 R.I. 505, 511, 368 A.2d 566, 569–70 (1977).

In *Dionne* and *State v. Anthony*, —— R.I. ——, 448 A.2d 744 (1982), we confronted situations that typify the abuses Rule 48(b) was designed to ameliorate. In *Dionne* the defendant had been arraigned on a charge of driving so as to endanger, resulting in death. It then took fifteen months for the case to be assigned to the pretrial conference calendar, and eight more months followed before it was reached for trial. After two continuances the trial was finally commenced nearly five months later, two years and seven months after the defendant's arraignment. The record indicated that the defendant was responsible for only two weeks of this delay.

When pressed for an explanation, the Attorney General maintained that there was no "conscious decision" to impede Dionne's trial; instead, Dionne's case had been at the end of a backlog of cases and did not meet any of the then Attorney General's discretionary criteria for priority treatment.[1] The trial justice dismissed the information, finding that the delay had not been sufficiently justified. We affirmed.

In *Anthony* the state sought to try codefendants Anthony and DePari together on murder charges. As a result of factors peculiar to the trial of Anthony, who was tried for another murder during this time, twenty-eight months passed between completion of discovery and the start of the trial. We held that the state's interest in "avoiding a duplicity of trials for joint de-

fendants * * * [is not] sufficient to warrant the passage of nearly three years before DePari was brought to trial." *State v. Anthony*, —— R.I. at ——, 448 A.2d at 748. Anthony's conviction, however, was affirmed since his involvement in the other prosecution sufficiently justified the lengthy delay of *his* trial.

I would agree with the rule's detractors that application of the rule has been far from trouble free. I would argue, however, that we should attempt to cure its defects, as have the vast majority of our sister states, instead of taking an approach that results in the baby being thrown out with the bathwater.

Successful application of Rule 48(b) has been frustrated by several factors. The Superior Court's dissatisfaction appears to stem from the absence of both mandated timetables for the processing of cases and guidelines for factors that should be assessed against a certain party or merely considered neutrally. *State v. Brown*, Super.Ct. No. 79–1528, pp. 43, 44 (bench decision, Grande, J., April 26, 1983), *rev'd*, —— R.I. ——, 486 A.2d 595 (1985). I would maintain, however, as we have stated before, that application of the rule was intended to be vested within the sound discretion of the trial justice, only to be reversed upon a clear showing of abuse. *State v. Macaskill*, —— R.I. ——, 475 A.2d 1024 (1984). It is interesting to note that in the time since the rule's inception, this court has overruled a decision of the Superior Court on a Rule 48(b) motion only four times: once when the motion had not been granted (*Anthony*) and three times when the motion had been granted (*Paquette*, *Brown*, and *Macaskill*).[2]

---

1. Priority was accorded "capital cases, cases in which a defendant was incarcerated pending trial because bail was either too high to be met or not set, old cases, and cases in which trial attorneys with heavy criminal trial practices in other courts were able to work out trial dates with the Attorney General and the court." *State v. Dionne*, —— R.I. ——, ——, 474 A.2d 445, 447 (1984). *Dionne* was finally placed on the trial

calendar when it became an "old" case by virtue of its longevity.

2. *Dionne* does not fall comfortably into either category. In *State v. Dionne*, —— R.I. ——, 442 A.2d 876 (1982), after the trial justice denied Dionne's Rule 48(b) motion, we remanded the case for an evidentiary hearing exploring the reasons for the delay. After hearing, the trial justice dismissed the information, and we af-

The situation has been further complicated by indifferent record keeping. On several occasions, in attempting to determine the occurrence of and accountability for delay, the Superior Court docket entries, face sheets, and other official reporting forms have been virtually useless. Justice Grande, when faced with a Rule 48(b) dismissal motion, had this to say:

"[T]he travel sheets on these cases, that is to say, the entries made on the criminal case face sheets, are inaccurate and they are inconsistent. The docket entries reflecting what was occurring while the matters were [before another judge] are absent from the file." *State v. Brown*, at 40.

Additionally, I believe that there are some attorneys who assume that the judicial system is being run for the convenience of the bar and not the public. Delay is often occasioned by the demands of a busy trial lawyer's practice. At times the trial calendar is also subject in some measure to the caprice of the Attorney General's department.

"It is no secret that when the Attorney General wants a case prosecuted quickly it surfaces on the trial calendar, and, it gets prosecuted quickly. It is no secret that the judge in charge of a trial calendar and the criminal scheduling office has always been receptive to requests by the Attorney General that a case be assigned as quickly as possible for trial." *Id.* at 45.

When certain cases are thrust to the forefront, others are necessarily displaced, and their progress through the system is consequently impeded.

By abandoning Rule 48(b), we have left Rhode Island among the small minority of states without the enhanced protection of a speedy-trial rule. Many states have far more restrictive statutes, requiring dismissal after a certain number of days have elapsed without bringing the defendant to trial. Texas, for example, requires the court to grant a motion to set aside an indictment, information, or complaint for failure to try after 120 days (felonies), 90 days (misdemeanors punishable by imprisonment for six months or more), and 60 days (lesser misdemeanors). Tex.Code Crim.Proc.Ann. art. 32A.02, § 1 (Vernon 1966–1983 Supp.). Vermont's Rule 48(b)(1) incorporates an administrative order of the Vermont Supreme Court that requires the prosecution to be ready for trial within 90 days after arraignment when the defendant is in custody or within 6 months after arrest in other cases. Under the order both periods may be extended for cause or when the delay is the fault of the defendant. *See* Vt.R.Crim.P. 48(b)(1) Reporter's Notes at 196. While it is true that the right to a speedy trial is guaranteed by the United States Constitution, the invocation of its protection is only possible where the defendant's case has been prejudiced by the lapse of time. This avenue would not have afforded protection to the aggrieved defendants in *Dionne* or *Anthony*.

I am concerned that, by their repeal of Rule 48(b), the Superior Court justices might have made the Judicial Department and the court's management of the trial calendar subject to the whims of the prosecutorial force. The public has a right to expect that there will be an expeditious trial of criminal cases so that there will be some assurance that prosecution witnesses will be available to testify about what has occurred. Insistence on a speedy trial preserves the means of proving a charge, maximizes the deterrent effect of prosecution and conviction, and avoids, in some cases, an extended period of pretrial freedom for a defendant who, during that time, may flee, commit other crimes, or intimidate witnesses. *Tate v. Howard*, 110 R.I. at 645, 296 A.2d at 26; ABA Standards for Criminal Justice, *Speedy Trial* 12–1.1 at 12.5 and 12.6 (2d ed. 1980).

A stone's throw away from the Providence County Courthouse stands the United States District Court for the District of

firmed. *State v. Dionne*, — R.I. at —, 474 A.2d at 449.

Rhode Island. There, because of the congressional mandates set forth in the Speedy Trial Act requiring a trial within seventy days of the filing of a not-guilty plea, criminal cases are disposed of in an expeditious manner. 18 U.S.C.A. § 3161(c)(1) (1979). I fully realize that the number of federal criminal cases is well below that entering our Superior Court system. However, I am convinced that Rule 48(b) could perform an important function in the effective management of the Superior Court case load. The rule should have been cured of its defects rather than interred. I regret its passing.

This dissent was circulated to my colleagues prior to July 1, 1985, and at that time the Chief Justice authorized me to indicate that he subscribes to the views expressed herein.