**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 10 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JOSEPH ROY MORRISON,

     Defendant - Appellant.

No. 02-1136
D.C. No. 01-CR-277-N
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **LUCERO** and **O'BRIEN**, Circuit Judges.

Joseph Roy Morrison appeals his conviction of being a felon in possession

of ammunition in violation of 18 U.S.C. § 922(g)(1). He argues that the district

court should have suppressed evidence introduced against him because it was the

product of various Fourth and Fifth Amendment violations. Because we find that

no constitutional violations were committed during Morrison's investigation and

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

arrest, we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM his conviction.

I.    FACTS[1]

On the evening of June 21, 2001, Chaffee County Sheriff's Deputy Mike Browett observed two cars parked on the northbound shoulder of Highway 285, south of Nathrop, Colorado. As he drove by, he noticed two men standing outside these cars, one of whom appeared to be waving the deputy down. Deputy Browett made a u-turn, pulled in behind the cars and addressed the man who had flagged him down—William Boyd.

Boyd informed Deputy Browett that the other driver (the defendant Joseph Morrison) was speeding and driving recklessly. Boyd told Browett that after Morrison had passed Boyd in his car, they both pulled off the highway. They began to have an argument and Morrison hit Boyd in the chest and chin. Morrison then brandished a pipe device and asked Boyd if he wanted Morrison to "blow his head off."

As Boyd related these details to Deputy Browett, Morrison drove away. Intending to further investigate the alleged traffic violations and menacing

---

[1]Unless otherwise noted, these facts are taken from the district court's oral findings of fact at the hearing on Defendant's Motion to Suppress. (9/13/01 Hrg. Tr. at 62-69.)

behavior, Deputy Browett decided to follow Morrison and instructed Boyd to follow in his own car.

Browett pulled Morrison over and ran a routine check of his license, registration, and insurance, which revealed nothing unusual. Browett informed Morrison that he wanted to talk further with both him and Boyd to determine what happened during the altercation.

Boyd then reported that Morrison, who was speeding, had tailgated and then passed him over a double yellow line. Boyd then attempted to pass Morrison, who swerved, running Boyd off the highway. They then exchanged obscene gestures and Boyd pulled over, followed by Morrison. As Morrison approached him, Boyd took out a metal fly rod case to protect himself. An argument ensued; Morrison hit Boyd in the chin and chest, pushed Boyd, pulled out the pipe device and threatened to "blow his head off."

Browett and a back-up officer, Deputy Vidmar, then approached Morrison's car to question him. Morrison claimed he had no weapons except a pocket knife, which he gave to the officers, and denied pointing anything at Boyd's head. Browett then conducted a protective pat-down and discovered a .308 caliber bullet in Morrison's pocket, which Morrison explained was his good luck charm. During this interview, Browett detected the smell of alcohol on Morrison's breath.

Browett asked Morrison if he had anything illegal in his car. Morrison denied having anything illegal and permitted Browett to search the car. Browett recovered the pipe device, which he thought might be drug paraphernalia, as well as a butterfly knife. Morrison told Browett the device was something he had put together because he was bored.

Browett showed the device to Boyd, who confirmed that it was the object Morrison used to threaten him. Upon closer examination, Browett realized that the pipe was a loaded makeshift firearm known as a "zip gun" and arrested Morrison for possession of an illegal weapon and felony menacing. Fearing that it would discharge, Browett placed the zip gun on the ground and summoned a more experienced police officer to help him disarm it. (ROA 2 at 26.) In response to that officer's question, Morrison said that the gun could be unscrewed and dismantled.

Browett then took Morrison to the Sheriff's office. On the way there, Morrison made several lewd suggestions and offensive remarks to Browett. A test revealed Morrison's blood alcohol level to be .047.

Prior to trial, Morrison moved to suppress the .308 caliber bullet and other evidence obtained from his car as well as several of the statements he made during the investigation. The district court denied his motion, and a jury convicted Morrison of being a felon in possession of ammunition.

We review the denial of a motion to suppress de novo; however, the district court's factual findings are only reviewed for clear error, viewing the evidence in the light most favorable to the Government. United States v. Treto-Haro, 287 F.3d 1000, 1002 (10th Cir. 2002).

## II.    FOURTH AMENDMENT CLAIMS

Morrison argues that the seized bullet and "zip gun" should have been suppressed as the products of an illegal search and seizure. He first claims that Deputy Browett lacked the reasonable suspicion of criminal activity to detain him as required by Terry v. Ohio, 392 U.S. 1, 19-20 (1968). To justify the seizure of a person, the "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.

We agree with the district court that Deputy Browett did have reasonable suspicion of criminal activity to detain Morrison. He had been flagged down by a citizen and given facts that would support several violations of state law. Although Browett did not witness any hostile activity or weapons, we find that Boyd's statement was sufficiently detailed, reliable, and consistent with his waving the deputy down to justify the Terry stop. United States v. Hishaw, 235 F.3d 565, 570 (10th Cir. 2000) ("[E]ven ambiguous behavior, susceptible to an

innocent interpretation, may give rise to a reasonable suspicion of criminal activity depending on the totality of the circumstances.") (internal quotations and citations omitted). The resulting detention lasted only long enough for Browett to investigate Boyd's claims and thus did not violate Morrison's Fourth Amendment rights.

Morrison next argues that 1) Browett did not have a reasonable suspicion that criminal activity was afoot or that Morrison might be armed and dangerous, such that a protective pat-down was justified, and 2) that even if Browett did have reasonable suspicion, he exceeded the scope of the permissible pat-down by reaching into Morrison's pocket to recover the bullet.

A police officer may pat down a detainee when the "officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." Terry, 392 U.S. at 24. Although Morrison maintains that his conduct provided no reasonable basis for Deputy Browett to fear that Morrison was potentially armed and dangerous, we have no trouble affirming the district court's contrary conclusion. Although Morrison had not behaved in a hostile or violent way, Browett had just been informed by a distressed motorist that Morrison had threatened to blow his head off with some kind of weapon. Furthermore, Morrison himself had revealed that during the violent confrontation with Boyd, he

had been holding a knife. (ROA 2 at 18.) These facts warrant Browett's pat-down of Morrison. See Hishaw, 235 F.3d at 570 (officers' reasonable suspicion that defendant was dealing drugs was alone sufficient to permit a protective pat-down).

In conducting the pat down, Deputy Browett encountered a long, cylindrical metal object in Morrison's pocket. (ROA 2 at 20.) "A search for weapons in the absence of probable cause to arrest . . . must, like any other search, be strictly circumscribed by the exigencies which justify its initiation." Terry, 392 U.S. at 25-26. Morrison contends that by just feeling the object, Browett could not have surmised that it was a weapon; thus, Browett exceeded the permissible scope of the pat-down. We disagree. Deputy Browett testified that he thought the object might be another knife. Terry, 392 U.S. at 27 ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."). Browett's suspicion was not unreasonable, and he was justified in removing the bullet from Morrison's pocket.

Morrison finally objects to the search of his car, which revealed the second knife and the zip gun. The district court's finding that Morrison consented to the search of his car is not clearly erroneous. There is no evidence that Morrison was under any duress or coercion, and Deputy Browett testified that Morrison

manifested clear and unequivocal consent for Browett to search the car. United States v. Lang, 81 F.3d 955, 967 (10th Cir. 1996).

Because we find that the police officers committed no Fourth Amendment violations in their investigation and arrest of Morrison, we affirm the district court's denial of Morrison's motion to suppress this physical evidence.

## III.  FIFTH AMENDMENT CLAIMS

Morrison contests the introduction of the following four statements during his jury trial: 1) his denial that he had pointed anything at Boyd's head; 2) his admission that he held a knife during the confrontation with Boyd; 3) his characterization of the .308 caliber bullet in his pocket as a "good luck charm"; 4) his explanation to Browett that the zip gun was something he put together because he was bored; and 5) his explanation that the zip gun could be unscrewed. Morrison argues that because he never received Miranda warnings these statements were obtained in violation of the Fifth Amendment.

The district court found that the statements were not suppressible. Reviewing the district court's findings of fact for clear error and its legal conclusions de novo, United States v. Hudson, 210 F.3d 1184, 1190 (10th Cir. 2000), we affirm its denial of Morrison's motion to suppress these statements.

Miranda warnings are only required when a defendant is in custody. Berkemer v. McCarty, 468 U.S. 420, 429 (1984). A defendant is not in custody for Miranda purposes unless his "freedom of action is curtailed to a degree associated with formal arrest." Id. at 440 (internal quotations and citations omitted). In this case, Morrison was not in custody when the first four statements were made. Deputy Browett had indicated to Morrison that he was merely trying to understand what had happened during the altercation between Boyd and Morrison. He did not physically restrain Morrison, use a weapon, or use a threatening tone of voice. Thus, Morrison was not in custody, and Miranda did not apply to his first four statements.

The final statement regarding the dismantling of the zip gun was made after Morrison was placed under arrest; however, it was clearly obtained only for the purpose of protecting the officers. A loaded makeshift firearm in the immediate vicinity of police officers and the public certainly poses the threat to public safety that permits questioning of a defendant in custody, even in the absence of Miranda warnings, about how to remove the immediate safety hazard that the home-made gun could accidentally discharge. New York v. Quarles, 467 U.S. 649, 655-56 (1984).

For the foregoing reasons, we find that the district court correctly denied Morrison's motion to suppress and AFFIRM its judgment.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge