**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

**v.**

**Matthew Christopher O'NEAL,**
**Defendant–Appellant.**

**No. 07CA1895.**

Colorado Court of Appeals,
Div. III.

Oct. 1, 2009.

Rehearing Denied Nov. 19, 2009.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Stephen Arvin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by Judge DAILEY.

Defendant, Matthew Christopher O'Neal, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a weapon by a previous offender. We affirm.

Responding to a shoplifting call, police encountered defendant and two others sitting in a car in the parking lot of a store. The police noticed a semi-automatic 9mm pistol sitting on the floor inside the car. They seized the pistol, which defendant admitted was his.

After police discovered that he had previously been adjudicated a juvenile delinquent based on an act which, if committed by an adult, would constitute a felony, defendant was charged under section 18–12–108(3), C.R.S.2009, with possession of a weapon by a previous offender.

At trial, it was uncontested that the pistol was inoperable. Defendant had told the police that, when he found the pistol in a street gutter, it looked "as if it had been run over" and did not work. Indeed, the pistol not only lacked grips, but also had a crack in the base of the gun handle that prevented the gun from being loaded. Further, the trigger bar was not, in the words of one witness, "how it should be," and the firing pin would not activate. One witness opined that, to make it functional, a person would have to take the pistol to a gunsmith to have it disassembled according to the manufacturer's specifications and rebuilt by replacing the missing parts.

The trial court instructed the jury that the elements of the offense with which defendant was charged included, as pertinent here, that

he "knowingly possessed a firearm, namely, a handgun." It defined the term "firearm" as "any handgun, automatic, revolver, pistol, rifle, or other instrument or device *capable or intended to be capable* of discharging bullets, cartridges, or other explosive charges." (Emphasis added.)

The trial court rejected defendant's three tendered theory of the case instructions, the gist of which was that defendant was not guilty because (1) he believed the pistol was inoperable and (2) he never intended, or knew of anyone else's intent, that the pistol be operable from the time he found it until the time it was seized by the police. In rejecting these instructions, the court was persuaded by the People's argument that, where, as here, a case involves an inoperable gun, only the gun manufacturer's original intent that it be operable was relevant.

The trial court informed the jury only that defendant "contends that he is not guilty because the firearm was not capable of discharging bullets."

The jury subsequently convicted defendant as charged, and the trial court sentenced him to three years probation.

## I. Firearms

Defendant contends that the trial court erroneously interpreted the law when it ruled his intent was irrelevant to the determination of whether the inoperable pistol was a firearm. We disagree, albeit for reasons different from those stated by the trial court.

The statutory provisions governing this issue are sections 18–12–108(3) and 18–1–901(3)(h), C.R.S.2009.

In pertinent part, section 18–12–108(3) provides that

[a] person commits the crime of possession of a weapon by a previous offender if the person knowingly possesses, uses, or carries ... *a firearm* as described in section 18–1–901(3)(h) or any other weapon that is subject to the provisions of this article subsequent to the person's adjudication for an act, which, if committed by an adult, would constitute a felony.

(Emphasis added.)

Section 18–1–901(3)(h) defines a firearm as "any handgun, automatic, revolver, pistol, rifle, shotgun, or other instrument or device capable or intended to be capable of discharging bullets, cartridges, or other explosive charges."

Although the definition of "firearm" has remained unchanged since it was originally enacted in 1971, *see* Ch. 121, sec. 1, § 18–1–901(3)(h), 1971 Colo. Sess. Laws 413, it has not been interpreted in the context of the issues raised in this case in any reported appellate decision.

In interpreting section 18–1–901(3)(h), our task is to ascertain and give effect to the intent of the General Assembly. *Dubois v. People,* 211 P.3d 41, 43 (Colo.2009). To discern the legislative intent, we look first to the plain language of the statute itself, *People v. Summers,* 208 P.3d 251, 253–54 (Colo.2009), and do not presume that the legislature used language idly. *People v. J.J.H.,* 17 P.3d 159, 162 (Colo.2001). In construing statutory language, we read the statute as a whole, with the goal of giving "consistent, harmonious, and sensible effect to all its parts." *Summers,* 208 P.3d at 254 (quoting *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986)). "We presume that the General Assembly intends a just and reasonable result that favors the public interest over any private interest, and we will not construe a statute either to defeat the legislative intent or to lead to an absurd or illogical result." *People v. Reed,* 932 P.2d 842, 843 (Colo.App. 1996).

On appeal, the parties agree that the phrase "capable or intended to be capable of discharging bullets" appearing in section 18–1–901(3)(h) modifies each type of possible firearm listed in that provision. They differ only over whose intent the General Assembly meant to reference.

For the following reasons, we are not persuaded that the phrase "capable or intended to be capable" modifies each type of possible firearm listed in the statute. Because we perceive that it modifies only "other

instrument or device," we conclude that, under section 18–1–901(3)(h), a pistol (no matter what its condition, no matter what a defendant's intent may be with respect to it) is a "per se" firearm.[1]

In reaching this conclusion, we find instructive the supreme court's treatment of a similarly structured statutory definition that was enacted at the same time as section 18–1–901(3)(h). As originally enacted in 1971, section 18–1–901(3)(e) defined "deadly weapon" as "any firearm, knife, bludgeon, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is *used or intended to be used* is capable of producing death or serious bodily injury." *See* Ch. 121, sec. 1, § 40–1–1001(3)(e), 1971 Colo. Sess. Laws 413 (emphasis added).

In *People v. McPherson,* 200 Colo. 429, 619 P.2d 38 (1980), the supreme court held that the "used or intended to be used" language modified not each type of weapon listed, but only the last type, that is, "other weapon, device, instrument, material or substance." The court reasoned that "other weapon . . ." clause was "preceded by an 'or,' and the general rule of statutory construction is that relative and qualifying words and phrases, when no contrary intention appears, are construed to refer solely to the last antecedent with which they are closely connected." *Id.* at 432, 619 P.2d at 40.

Thus, in *Bowers v. People,* 617 P.2d 560 (Colo.1980), the supreme court recognized that section 18–1–901(3)(e) "creat[ed] two separate categories" of weapons: "Firearms, knives, and bludgeons are deadly weapons by their essential nature. All other items may or may not be deadly weapons, depending upon how they are used or intended to be used." *Id.* at 563.

Following the *McPherson* and *Bowers* decisions, the General Assembly amended section 18–1–901(3)(e) to reorganize some, and to more emphatically separate others, of its clauses. *See* § 18–1–901(3)(e), C.R.S.2009. Nonetheless, the supreme court's interpretation of section 18–1–901(3)(e) remains the same. *See J.D.C. v. District Court,* 910 P.2d 684, 688 (Colo.1996) ("This statutory definition prescribes the test to determine whether items other than firearms, knives, and bludgeons constitute deadly weapons, based not on the intrinsic nature of the items, but upon their use or intended use."); *People v. Ross,* 831 P.2d 1310, 1312 (Colo.1992) ("Section 18–1–901(3)(e) segregates objects into two categories: items 'deadly . . . by their essential nature' (firearms, knives, and bludgeons), and '[a]ll other items.' " (quoting *Bowers,* 617 P.2d at 563)).

Using the reasoning applied, and the results reached, in the *McPherson* and *Bowers* cases, we conclude that, under section 18–1–901(3)(h), handguns, automatics, revolvers, pistols, rifles, and shotguns qualify as per se "firearms," without need of any further inquiry into whether they are capable or intended to be capable of discharging bullets, cartridges, or other explosive charges.

We acknowledge that in 1981 the General Assembly expressly repudiated a critical premise underlying the *McPherson* and *Bowers* decisions, that is, the presumption that referential and qualifying words and phrases refer solely to the last antecedent clause immediately preceding them. *See* § 2–4–214, C.R.S.2009 (enacted effective 1981); *Estate of David v. Snelson,* 776 P.2d 813, 818 (Colo.1989).

However, to ascertain the meaning of section 18–1–901(3)(h), we must look to the rules of statutory construction in effect when it was enacted in 1971, not ten years later, when section 2–4–214 was enacted. This follows, because (1) § 2–4–214 is presumed to be prospective in operation, *see* § 2–4–202, C.R.S.2009; (2) the most relevant time period for determining a statute's meaning is the time when the statute was enacted, *see MCI Telecommunications Corp. v. Am. Telephone & Telegraph Co.,* 512 U.S. 218, 228, 114 S.Ct. 2223, 2230, 129 L.Ed.2d 182 (1994); *cf. State v. Nieto,* 993 P.2d 493, 503 n. 6 (Colo.2000) ("We cannot infer the intent of an earlier legislature from the views of a subsequent

---

**1.** At oral argument, we gave the parties the opportunity to address this construction of section 18–1–901(3)(h).

one."); and (3) the General Assembly is presumed to "legislate[ ] with knowledge of our basic rules of statutory construction," *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496, 111 S.Ct. 888, 898, 112 L.Ed.2d 1005 (1991).

In 1971, the "last antecedent" rule of statutory construction was well established in Colorado law. *See Wheeler v. Rudolph*, 162 Colo. 410, 415, 426 P.2d 762, 764 (1967); *City & County of Denver v. People*, 103 Colo. 565, 574–75, 88 P.2d 89, 93 (1939); *People ex rel. Boatwright v. Newlon*, 77 Colo. 516, 523, 238 P. 44, 46 (1925); *In re House Resolution No. 10*, 50 Colo. 71, 76, 114 P. 293, 295 (1911). Thus, it is appropriate to rely here upon the last antecedent rule, as the supreme court did in *McPherson* and *Bowers;* indeed, it would be anomalous to subject statutes enacted at the same time, like those defining "deadly weapon" and "firearms," to different interpretive criteria.

Our interpretation of section 18–1–901(3)(h) is consistent with that of the supreme court in *People v. Gross*, 830 P.2d 933 (Colo.1992). In determining whether a person found with a sixteen-inch screwdriver could be convicted of the crime of possession of a weapon by a previous offender, the court in *Gross* contrasted the manner in which section 18–12–108 applied to "firearm[s]" with the manner in which it applied to the category of "other weapon[s]."

As pertinent here, the court in *Gross* noted:

> Given the intrinsic nature of a revolver, section 18–12–108 did not require a purposeful intent for the revolver to constitute a weapon. According to the statutory definitions, *revolvers by their very nature constitute weapons; the only question on which criminal liability turns is whether the defendant knowingly possessed the revolver. See* §§ 18–12–108 (firearm desig-

nated as a weapon) and *18–1–901(3)(h) (firearm defined to include revolver).*

830 P.2d at 940 (emphases added).

The same can be said, under section 18–1–901(3)(h), of handguns, automatics, pistols, rifles, and shotguns. These too are per se firearms.

■ The last category of firearms described under 18–1–901(3)(h) encompasses things that, although not intrinsically in the nature of a firearm, are *nonetheless shown* to be, like the more conventional firearms, capable or intended to be capable of discharging bullets and the like. *See generally People v. Beck*, 187 P.3d 1125, 1129 (Colo.App.2008)(under the statutory construction principle of ejusdem generis, "where a general term follows a list of things in a statute, the general term[ ][is] applied only to those things of the same general kind or class as those specifically mentioned").[2] Unconventional "firearms" of this type would include, for example, zip guns. *See, e.g., United States v. Morrison*, 58 Fed.Appx. 381, 383 (10th Cir.2003) (pipe device was "a loaded makeshift firearm known as a 'zip gun' "); *United States v. Gometz*, 879 F.2d 256, 258 & n. 1 (7th Cir.1989)(inmate attempted to shoot prison guard with "a homemade device commonly known as a zip gun").

For these reasons, it was not necessary for the prosecution to prove anyone in particular intended the pistol here be capable of discharging bullets or the like. *Cf. People v. Atencio*, 878 P.2d 147, 150–51 (Colo.App. 1994) (because "[f]irearms, knives and bludgeons are per se" deadly weapons, "it was not necessary for the prosecution to show that the defendant intended to use [a 9 mm semi-automatic handgun] as a deadly weapon").

Thus, we perceive no error in the court's rejection of defendant's instructions. *See People v. Smith*, 77 P.3d 751, 756 (Colo.App. 2003) ("[A] trial court may refuse to give a

---

**2.** Like other jurisdictions, we construe the firearm definition, in all its categories, to encompass inoperable, as well as operable, firearms. *See, e.g., People v. Peals*, 476 Mich. 636, 720 N.W.2d 196, 200, 206 (2006); *State v. Middleton*, 143 N.J.Super. 18, 362 A.2d 602, 604 (1976). The

prosecution need show an intent (or design) that a device be capable of discharging bullets, etc., however, only in the case of an inoperable firearm of the last, or unconventional, category listed in section 18–1–901(3)(h).

defendant's theory of the case instruction that misstates the law....").

## II. Constitutional Challenges

■ We also reject defendant's contention that section 18–1–901(3)(h) is unconstitutionally vague or violative of due process because (1) a person of ordinary intelligence would not know whether it refers to the intent of the defendant or of the pistol's manufacturer or (2) if it refers to the manufacturer's intent, it impermissibly assigns criminal culpability based on the mental state of a third party.

Defendant's assertions rest upon a premise that we have rejected. In section I of this opinion, we held that, in the case of an inoperable pistol, the prosecution need not make an independent showing that someone (i.e., the manufacturer or the defendant) intended that the pistol be capable of discharging bullets.

Inasmuch as defendant's assertions of unconstitutionality are, given our construction of the statute, moot, we do not address them further.

## III. Opinion Evidence

■ Similarly, we reject defendant's contention that reversal is required because the trial court erroneously admitted lay opinion evidence about whether the pistol was designed to discharge bullets and the like.

Here, the case was tried on the erroneous belief, shared by both parties, that the prosecution would have to show that someone intended that the pistol be capable of discharging bullets. To the extent that this type of evidence was erroneously admitted, the error was harmless, as the jury's consideration of this evidence could only have inured to the benefit of defendant. *Cf. People v. Swanson,* 638 P.2d 45, 50 (Colo.1981) (instruction benefited defendant by imposing a more demanding standard of culpability than the statutory standard and was, therefore, harmless error).

## IV. Sufficiency of the Evidence

■ Finally, we reject defendant's challenge to the sufficiency of evidence to sustain his conviction.

In reviewing the sufficiency of the evidence, we determine, after viewing both direct and circumstantial evidence in the light most favorable to the prosecution, whether the evidence was sufficient both in quantity and quality to prove the charge beyond a reasonable doubt. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005). We give the prosecution the benefit of every reasonable inference which can be fairly drawn from the evidence. *People v. Johnson,* 923 P.2d 342, 346 (Colo.App.1996). If there is evidence upon which the jury may reasonably infer an element of the crime, the evidence is sufficient to sustain that element. *People v. Grant,* 174 P.3d 798, 812 (Colo.App.2007).

Defendant's sufficiency challenge rests, again, upon the application of the "intended to be capable of discharging bullets" part of the definition of firearm to his pistol. According to defendant, if, as the trial court held, only the manufacturer's intent was relevant, then the prosecution had to present proof of the specific pistol manufacturer's intent.

As noted, we have interpreted the statute not to require a showing of anyone's intent when the claimed firearm is, as here, a pistol. Because there was ample evidence that the item was a pistol, we necessarily reject defendant's challenge to the sufficiency of the evidence that he possessed a "firearm."

The judgment of conviction is affirmed.

Judge ROMÁN and Judge TERRY concur.