FLAHERTY, J.,
and INDEGLIA, J„ concurring in part and dissenting in part.
Although we agree that the defendant’s adjudication of probation violation should be affirmed, we respectfully dissent from the majority’s analysis and interpretation of the Firearms Act, G.L.1956 chapter 47 of title 11 (the Firearms Act or act). Specifically, in our opinion, § 11-47-2(3) (defining “firearm”) is unambiguous and does not require that the specifically enumerated weapons — as well as the frame or receiver of those weapons — have the capability of expelling a projectile, or be readily converted to do so, in order to constitute a firearm.
Section 11-47-2(3) defines the following weapons as firearms: “any machine gun, pistol, rifle, air rifle, air pistol, ‘blank gun,’ ‘BB gun,’ or other instrument from which steel or metal projectiles are propelled, or which may readily be converted to expel a projectile * * The majority concludes that, if the General Assembly had intended *502 to include within the definition of a firearm weapons that cannot expel a projectile or be readily converted to do so, it did not express that intent clearly and unambiguously, and therefore, the rule of lenity must be applied. We disagree. Although we concede that this statute is not a model of artful draftsmanship, we conclude that § 11-47-2(3) unambiguously indicates that the modifying phrase “from which steel or metal projectiles are propelled, or which may readily be converted to expel a projectile” applies only to the term “other instrument” and not to its counterparts enumerated in the act. Below, we explain our rationale in reaching this conclusion.
I
The Legislative History
The majority correctly points out that in 1927, when the General Assembly enacted the Firearms Act, it defined a firearm as “any machine gun” (any weapon which shoots automatically) “or pistol” (which excluded those weapons designed for the use of blank cartridges only). P.L.1927, ch. 1052, § 1. However, in 1950, the General Assembly then amended the Firearms Act to explicitly include blank guns — which are per se incapable of expelling projectiles— within the definition of “firearm.” P.L. 1950, ch. 2452, § 1; see R.A. Steindler, The Firearms Dictionary 55 (1970) (explaining that blank guns expel blank cartridges, which “contain[ ] a special propellant powder, but no bullet”). Because a blank gun does not (and cannot) expel a projectile and cannot readily be converted to do so, its inclusion within the definition of a firearm undercuts the majority’s conclusion that a weapon must meet those requirements to constitute a firearm.
We disagree with the majority’s contention that “[bjlank guns can, in some circumstances, readily be converted to expel a projectile.” First, the cases that the majority cites to support their assertion deal with starter guns, and the majority assumes that a starter gun is identical to a blank gun. Even if we ignore this inconsistency, we do not believe that there are any circumstances in which a blank gun could readily be converted to fire a projectile. See State v. Waugh, No. 35362, 1977 WL 201120, at *2 (Ohio Ct.App. Jan. 6, 1977) (where a statute defined the term “firearm” as “any deadly weapon capable of expelling or propelling one or more projectiles * * * and any firearm which is inoperable but which can readily be rendered operable”, Ohio Rev.Code Ann. § 2923.11(B) (LexisNexis 1975), the court held that “[cjlearly, a ‘blank gun’ is not a ‘firearm’ under the above statutory definition”).
Likewise, in another amendment, in 1975, the General Assembly also added the terms “frame[s]” and “receiverfs]” — items that, by definition, are incapable of expelling projectiles — to the definition of a firearm. P.L.1975, ch. 278, § 1. Indeed, a frame or receiver is the mere skeleton of a weapon, to which all the other parts attach. See The Firearms Dictionary at 107-08, 189. Thus, although initially the embrace of the Firearms Act included only those weapons which were deemed operable, the succeeding amendments to that act reveal that the General Assembly no longer intended to include a weapon’s capability of expelling a projectile or its readiness to do so as a prerequisite to constitute a firearm. Moreover, those amendments belie the majority’s assertion that “[t]he legislative history from 1927 onward does not suggest an intent to broaden the scope of the Firearms Act to encompass instruments that are incapable of firing or may have been rendered permanently inoperable.” Instead, although the Firearms Act as initially drafted in 1927 included only those weapons which were deemed opera *503 ble, the succeeding amendments to that act reveal that the enumerated weapons need not be capable of expelling a projectile to constitute a firearm.
We believe that this reading of § 11-47-2(3) is more harmonious with the design of the Firearms Act as a whole as well as its purpose and underlying policy. See Ryan v. City of Providence, 11 A.3d 68, 71 (R.I.2011) (It is crucial to statutory interpretation that we “consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections.” quoting Sorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I.1994)). Indeed, the Firearms Act distinguishes the definition and use of a “firearm,” which includes both operable and inoperable weapons, from the definition and use of a “pistol,” which includes operable weapons and specifically excludes inoperable weapons. See § 11-47-2(3), (8). The more-expansive term, “firearm,” is then used to restrict possession of both operable and inoperable weapons by fugitives and those who have been convicted of crimes of violence, while the narrower term, “pistol,” is used to restrict possession of operable weapons by individual members of the general public without a proper license. See §§ 11-47-5, 11-47-8(a).
This distinction reflects a reasoned policy of keeping firearms out of the hands of felons and fugitives, whether or not those weapons are capable of expelling a projectile.[19] Indeed, the brandishing of a blank gun or the display of a frame or receiver is indistinguishable from that of a gun that expels bullets. By way of example, one can envision the scene of a robbery: someone brandishes a blank gun, demanding money. The person on the other end of that gun is hardly in a position to ask the aggressor or to independently discern whether that weapon is able to expel bullets. The risk of deadly violence is the same whether or not the gun shoots bullets or blanks — the victim could, in turn, fire a gun in self-defense, or a third party could intervene. Either way, the brandishing of a blank gun or the display of a frame or receiver can cause just as much societal harm as that of a gun that expels bullets.
In light of the fact that “[t]he [General Assembly] is presumed to have intended each word or provision of a statute to express a significant meaning, and the [C]ourt will give effect to every word, clause, or sentence, whenever possible,” Swain v. Estate of Tyre, 57 A.3d 283, 288 (R.I.2012) (quoting State v. Clark, 974 A.2d 558, 571 (R.I.2009)), we cannot ignore its decision to include the term “blank gun” and the term “frame or receiver” within the definition of firearm. This inclusion clearly shows that the General Assembly did not intend that a weapon be operable in order to constitute a firearm.
II
The Rule of Last Antecedent
Although we believe that the Firearms Act is unambiguous, and that we, therefore, need not look beyond its plain language, our conclusion is further supported by the doctrine of construction known as the rule of last antecedent. That canon *504 “provides that ‘referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. * * * Thus, a proviso is usually construed to apply to the provision or clause immediately preceding it.’ ” State v. Brown, 486 A.2d 595, 600 (R.I.1985) (quoting 2A C. Sands, Sutherland Statutory Construction, § 47.33 at 245 (4th ed.1984)); see also Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (“[A] limiting clause or phrase * * * should ordinarily be read as modifying only the noun or phrase that it immediately follows * * *.”); People v. O’Neal, 228 P.3d 211, 215 (Colo.App.2009), cert denied, 2010 WL 1436208 (Colo. Apr. 12, 2010) (ere banc). Indeed, the majority readily concedes that the rule of last antecedent “create[s] an inference of meaning consistent with sound rules of grammar.”
Recently, in O’Neal, 228 P.3d at 215, the Colorado Court of Appeals employed the rule of last antecedent when construing a similar firearms statute that was applied to similar facts.[20] In that case, the defendant, a previous offender, was found guilty of possession of a firearm. Id. at 212. The gun in question, which appeared to have been run over by a car, lacked grips, had an inoperative firing pin, had a misplaced trigger bar, and had a crack in the base of the handle that prevented it from being loaded. In defining the term “firearm,” the Colorado statute enumerated a list of weapons, similar to that provided in § 11-47-2(3), followed by the modifying phrase “capable or intended to be capable of discharging bullets, cartridges, or other explosive charges.” Colo.Rev.Stat. Ann. § 18-l-901(3)(h) (West 2004). In construing the statute, guided by the rule of last antecedent, the O’Neal court held that the modifying phrase applied only to the last item enumerated in the statute (“other instrument or device”) and not to any of the previously enumerated items within that statute. O’Neal, 228 P.3d at 213-14. Therefore, the court concluded that a gun deemed incapable of discharging bullets, cartridges, or other explosive charges constituted a firearm as prescribed under the statute. Id.
Likewise, it is our opinion that the qualifying language in our own statute (“from which steel or metal projectiles are propelled, or which may readily be converted to expel a projectile”) applies only to the last item enumerated (“other instrument”). See § 11-47-2(3). Thus, as the rule of last antecedent explains, any of the preceding items delineated in that statute are firearms notwithstanding their ability to propel projectiles.
Ill
Conclusion
For the foregoing reasons, we respectfully dissent from the majority’s decision affirming the trial justice’s order denying the state’s motion in limine. However, we concur with the majority’s decision affirming the adjudication of probation violation.

. This policy is further reflected in G.L.1956 § 11-47-6, which prohibits “[mjental incompetents, drug addicts, and drunkards” from the possession of a firearm, and in § 11-47-7, which prohibits "unnaturalized foreign born person[s] who entered the United States in violation of the laws of the United States or, having legally entered the United States in a lawful manner, but now remain[ ] in the United States in violation of the laws of the United States * * from the possession of a firearm.

. The Colorado statute provides that " '[f]ire-arm’ means any handgun, automatic, revolver, pistol, rifle, shotgun, or other instrument or device capable or intended to be capable of discharging bullets, cartridges, or other explosive charges.” Colo.Rev.Stat. Ann. § 18 — 1— 901 (3)(h) (West 2004).